Argued December 20, 1973, motion to dismiss allowed
March 4, petition for review denied May 29, 1974

## DAVID J. STERLING, *Petitioner, v.* BOARD OF PAROLE, *Respondent.*

519 P2d 1047

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Scott McAlister, Assistant Attorney General, Salem.

Before SCHWAB, Chief Judge, and FORT and TANZER, Judges.

FORT, J.

Petitioner, an inmate in the Oregon State Penitentiary, has filed a petition for judicial review of an order of the respondent which states:

"STATE BOARD OF PAROLE AND PROBATION

"Salem, Oregon 97310

"NOTICE TO INMATE

"To: STERLING, David J. 35642 Date: September 5, 1973

"At the meeting of the State Board of Parole and Probation held on this date, your case was considered, and it was the Board's order that:

"\* \* \* \* \*

" XXX  PAROLE HEARING DATE BE SET FOR March 1983

"\* \* \* \* \*

"September 5, 1973

"35642 STERLING, David J. PAROLE HEARING DATE SET for March 1983, with Psychiatric Report. Progress Reports and Psychiatric Reports requested in 1979 and 1981. He appeared. \* \* \*

"\* \* \* \* \*"

A motion to dismiss the appeal has been filed in this court by the respondent on the ground that it is not an appealable order within the meaning of Oregon Laws 1973, ch 694, sections 21 and 24, pp 1553-54.

Those portions of the statute read as follows:

"SECTION 21. Sections 22 to 25 are added to and made a part of ORS 144.310 to 144.400.

"SECTION 24. When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by a final order of the board related to the granting, revoking or discharging of parole, such person is entitled to judicial review of the

final order. The order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court filed within 60 days of the order for which review is sought. * * *"

The board contends that the order set out above, since it merely postpones for ten years the date when the petitioner shall be entitled to a parole hearing, is not a final order but only an interim one. Accordingly, it urges that the order here involved is not reviewable by this court. However, in the view which we take of this case, it is unnecessary to decide this question, and we do not do so.

We are faced initially with a problem of statutory construction. Oregon Laws 1973, ch 694 is an Act which extensively amended the parole and probation process, including termination of parole, as previously set forth in ORS 144.210-144.440. It did so by the addition of important new sections, the repeal of several, and the amendment of others. We note that ORS sections 144.310 to 144.400 are entitled "Termination of Parole." All of these sections are related only to that problem. Thus, the threshold question is whether or not the legislature intended this court to have power to review under section 24 any actions taken by the parole board independently of revocation or termination proceedings. It is conceded here, and the record shows, that the petitioner had never been granted parole status. No revocation or suspension of a parole status is therefore here involved.

The authority of the parole board to grant parole to inmates initially is not found in ORS 144.310-144.400. It is found in ORS 144.050 and ORS 144.210-144.270.

The problem is further complicated by the fact that ch 694 also contains major new sections and amendments to other sections dealing only with the original granting of parole, not with its revocation.

Sections 3 through 5, Oregon Laws 1973, ch 694, read as follows:

"SECTION 3. Sections 4 to 6 of this Act are added to and made a part of ORS 144.210 to 144.270.

"SECTION 4. Whenever the State Board of Parole considers the release of a prisoner who, by its rules or order, is eligible for release on parole, it shall be the policy of the board to order his release, unless the board is of the opinion that his release should be deferred or denied because:

"(1) There is a reasonable probability that the inmate will not, after parole, remain outside the institution without violating the law and that his release is incompatible with the welfare of society;

"(2) There is substantial risk that he will not conform to the conditions of parole;

"(3) His release at that time would depreciate the seriousness of his crime or promote disrespect for law;

"(4) His release would have a substantially adverse effect on institutional discipline; or

"(5) His continued correctional treatment, medical care or vocational or other training in the institution will substantially enhance his capacity to lead a law-abiding life when released at a later date.

"SECTION 5. In making its determination regarding a prisoner's release on parole, the State Board of Parole may take into account each of the following factors:

"(1) The prisoner's personality, including his maturity, stability, sense of responsibility and any

apparent development in his personality which may promote or hinder his conformity to law;

"(2) The adequacy of the prisoner's parole plan;

"(3) The prisoner's ability and readiness to assume obligations and undertake responsibilities;

"(4) The prisoner's intelligence and training;

"(5) The prisoner's family status and whether he has relatives who display an interest in him, or whether he has other close and constructive associations in the community;

"(6) The prisoner's employment history, his occupational skills, and the stability of his past employment;

"(7) The type of residence, neighborhood or community in which the prisoner plans to live;

"(8) The prisoner's past use of narcotics or dangerous drugs, or past habitual and excessive use of alcoholic liquor;

"(9) The prisoner's mental or physical makeup, including any disability or handicap which may affect his conformity to law;

"(10) The prisoner's prior criminal record, including the nature and circumstances, recency, frequency and type of previous offenses;

"(11) The prisoner's attitude toward law and authority;

"(12) The prisoner's conduct in the institution, including particularly whether he has taken advantage of the opportunities for self-improvement afforded by the institutional program, whether he has been disciplined for misconduct prior to his hearing or reconsideration for parole release, whether he has forfeited any reductions of term during his period of imprisonment, and whether the reductions have been restored at the time of hearing or reconsideration; and

"(13) The prisoner's conduct and attitude during any previous experience of probation or parole and when the experience occurred."

Section 7, Oregon Laws 1973, ch 694, extensively amends ORS 144.270. No right to judicial review of any order relating to the parole-granting process outlined in ORS 144.210-144.270 is made available in those sections of ch 694 relating to the parole-granting provisions of ch 144, ORS.

Section 24, Oregon Laws 1973, ch 694, is the only section of that Act which grants any right to judicial review, and, by section 21, such review is made applicable only to those portions of the statute relating to termination of parole. No judicial review was previously provided of orders relating to the initial granting or subsequent termination of parole.

On the other hand, section 24, standing alone, would seem to support judicial review of the granting process contained in ORS 144.210-144.270 because it says:

"When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by a final order of the board related to the granting, revoking or discharging of parole, such person is entitled to judicial review of the final order. * * *"

Sections 12 and 13, Oregon Laws 1973, ch 694, however, provide:

"SECTION 12. Sections 13 to 17 of this Act are added to and made a part of ORS 144.310 to 144.400.

"SECTION 13. (1) When a parolee is arrested and detained under ORS 144.330 or 144.350, the State Board of Parole or its designated representative shall conduct a hearing as promptly as convenient after arrest and detention to determine

whether there is probable cause to believe a violation of one or more of the conditions of parole has occurred and also conduct a parole violation hearing if necessary. The location of the hearing shall be reasonably near the place of the alleged violation or the place of confinement.

"(2) The board may:

"(a) Reinstate or continue the alleged violator on parole subject to the same or modified conditions of parole * * *.

"* * * * * *"

And, with respect to a parolee's right to counsel in termination proceedings, applicable portions of section 13 provide:

"(g) That the hearing is being held to determine:

"* * * * *

"(B) Whether to reinstate or continue the alleged violator on parole subject to the same or modified conditions of parole; or

"(C) Revoke parole and require that the parole violator serve the remaining balance of his sentence as provided by law."

Thus the question remains whether the words "related to the granting * * * of parole" in section 24, Oregon Laws 1973, ch 694 refer simply to the granting of parole through the authorized process of reinstatement of parole subject to the "same or modified conditions of parole."[1]

Essentially, therefore, the question is whether section 24, Oregon Laws 1973, ch 694, was intended to apply only to termination of parole proceedings as section 21, Oregon Laws 1973, ch 694, clearly implies, including the reinstatement of parole on the same con-

---

[1] Comment, *Due Process for Parolees: Oregon's Response to Morrissey v. Brewer,* 53 Or L Rev 57, 71, n 92 (1973).

ditions or the granting thereof after revocation on modified or different conditions, or whether it was intended to apply not only to ORS 144.310-144.400, as section 21, Oregon Laws 1973, ch 694, states, but also to orders issued under ORS 144.210 to ORS 144.270, contrary to the clear language of said section 21.

In *Gevurtz v. Myers,* 10 Or App 491, 493, 500 P2d 730 (1972), in construing two apparently conflicting portions of the same chapter, we said:

> "The statutes quoted above are part of the same Act and must be construed together, giving effect to the manifest legislative intent, and meaning to each provision thereof, if possible. [Citations omitted.]"

In *Curly's Dairy v. Dept. of Agriculture,* 244 Or 15, 21, 415 P2d 740 (1966), the Supreme Court pointed out:

> "Therefore, the court must construe the statute giving effect to the manifest intent of the legislature. *Sunshine Dairy v. Peterson et al.,* 183 Or 305, 193 P2d 543. The court may consider the language used, the object to be accomplished, extrinsic factors and numerous other items. *Sunshine Dairy v. Peterson et al.,* supra. The entire statute should be examined, including its preamble. *State ex rel. Peterson v. Woodruff,* 179 Or 640, 173 P2d 961. A statute is to be construed with reference to its manifest object, and, if the language is susceptible of two constructions, one which will carry out and the other defeat such manifest object, it should receive the former construction."

*See also: Lerch v. Cupp,* 9 Or App 508, 497 P2d 379, Sup Ct *review denied* (1972).

It is clear from the briefs of both parties and from testimony adduced before the committees of the legislature which considered ch 694, Oregon Laws

1973, that this legislation had its genesis in *Morrissey v. Brewer,* 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972). *See also:* Comment, *Due Process for Parolees: Oregon's Response to Morrissey v. Brewer,* 53 Or L Rev 57 (1973).

Professor Herbert Titus, testifying in behalf of the bill before the Senate Judiciary Committee, as revealed by the minutes of the committee on April 9, 1973, pointed out the bill as originally introduced "* * * is almost parallel to the requirements laid down in the *Morrissey* case * * *."

Mr. Pagel, Director of the Marion-Polk Counties Legal Aid Service, a proponent, stated:

"* * * [H]e would confine his remarks to the contested case aspect of Senate Bill 379. The *Morrissey* case required a two step process for hearings. One is a preliminary hearing near the place of the alleged parole violation to determine whether there is probable cause to believe the parolee violated his parole. * * *"

Parole board member Johnson and Solicitor General Osburn appearing on SB 379, later amended and enacted as Oregon Laws 1973, ch 694, both made clear that the sole concern of the state was to bring the parole board procedures into compliance with the minimum due process standards mandated by *Morrissey.*

Initially, and most importantly, we note that the sole question dealt with in *Morrissey* was, in the words of the court:

"* * * [W]hether the Due Process Clause of the Fourteenth Amendment requires that a State afford an individual some opportunity to be heard prior to revoking his parole." 408 US at 472.

In its unanimous decision the court, speaking through Chief Justice Burger, said:

"We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Cf. Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). Parole arises after the end of the criminal prosecution, including imposition of sentence. Supervision is not directly by the court but by an administrative agency, which is sometimes an arm of the court and sometimes of the executive. Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." 408 US at 480.

In pointing out why a revocation of parole proceeding involved rights far more extensive than were available to an inmate prior to parole, the court said:

"We turn to an examination of the nature of the interest of the parolee in his continued liberty. The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison." 408 US at 481.

At that point, a footnote states:

" 'It is not sophistic to attach greater importance to a person's justifiable reliance in maintain-

ing his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom.' United States ex rel. Bey v. Connecticut Board of Parole, 443 F.2d 1079, 1086 (CA 2 1971)." 408 US at 482, n 8.

Thus it is clear that *Morrissey* did not deal with the procedural rights of inmates relating to the initial granting of parole. *Gagnon v. Scarpelli,* 411 US 778, 93 S Ct 1756, 36 L Ed 2d 656 (1973), a later case dealing with revocation of probation, it is agreed by both parties, raises no constitutional due process considerations having application to this case. *See Ganz v. Bensinger,* 480 F2d 88 (7th Cir 1973) which holds that the parole release hearing is not a part of the criminal prosecution, and thus that the Sixth Amendment right to counsel in a criminal case does not apply to parole release matters.[⑨]

In *Lerch v. Cupp,* supra, we said:
"At the outset, we note that ORS 138.550 (1) must not be construed in a vacuum but must be read with the other provisions of Oregon's Post-Conviction Relief Act. ORS 138.510-138.680. *North v. Cupp,* 254 Or 451, 455, 461 P2d 271 (1969), *cert denied* 397 US 1054 (1970). In construing the statute, it is our duty to ascertain its policy and purpose and to consider in that connection whether or not such policy and purpose will be attained by a literal interpretation of the language used. [Citations omitted.]" 9 Or App at 511.

*See also: Harris v. Cupp,* 5 Or App 566, 568, 485 P2d 1113 (1971); *Anderson v. Alexander,* 191 Or 409, 419, 229 P2d 633, 230 P2d 770 (1951).

Tested by this rule, we conclude that section 24, Oregon Laws 1973, ch 694, has application only to

---

[⑨] *See also:* Bradley v. United States, 410 US 605, 93 S Ct 1151, 35 L Ed 2d 528 (1973).

termination of parole proceedings carried on pursuant to ORS 144.310-144.400. Only thus can we give effect to section 21, Oregon Laws 1973, ch 694. It follows then that this court has no jurisdiction to entertain a petition for judicial review of an order postponing the holding of a parole hearing concerning an inmate who has not been considered for nor previously granted a parole.

*Anderson v. Alexander,* supra, held that the revocation of a parole for violation of parole conditions without notice and hearing violated neither statutory nor constitutional rights of a parolee—a holding no longer valid under either *Morrissey* or Oregon Laws 1973, ch 694. There, however, Mr. Justice ROSSMAN, in his specially concurring opinion pointed out:

"No official is ever permitted to act arbitrarily or in violation of the law which governs his office. The extraordinary remedies, such as mandamus and habeas corpus, always afford protection against the unlawful administration of the law. Accordingly, if the board should promulgate rules and regulations governing the conduct of parolees which are not authorized by §§ 26-2305 and 26-2308, O.C.L.A., or if it should revoke a parole for some reason not countenanced by § 26-2308, its action would be unlawful and could be challenged in the courts."

Nothing in this opinion is intended to suggest that the challenged parole board order extending for ten years the period which must expire before the board will consider whether or not the petitioner is entitled to be considered for parole is either valid or invalid.[9] We express no opinion thereon.

The motion to dismiss is allowed.

---

[9] Burns v. Newell, 12 Or App 621, 507 P2d 414, Sup Ct *review denied* (1973). *See:* Brom v. Newell, 15 Or App 246, 515 P2d

SCHWAB, C. J., specially concurring.

I concur in the majority opinion. However, I wish to dispel any implication that *Morrissey v. Brewer,* 408 US 471, 92 S. Ct 2593, 33 L Ed 2d 484 (1972), can be construed as holding' that the United States Constitution requires a system of appellate review of parole board orders—be they orders denying or revoking parole, or orders modifying the conditions of parole previously granted. We have, and I think properly, resolved this case on a point which the parties did not raise by determining that our statutes do not provide for appellate review by this court of parole board orders denying as distinguished from revoking parole.

The 1973 legislature made extensive changes in the procedures required to be followed by the parole board. Broadly speaking, the legislature created two classifications of parole board hearings—one classification dealing with hearings considering the granting of parole, and the other classification dealing with hearings considering the revocation of parole or the modification of the conditions of parole previously granted. The legislature, albeit by ambiguous language, provided for judicial review by this court of orders in the revocation and modification classification, but did not provide for review by this court of orders entered pursuant to hearings that determine whether and under what conditions parole should be granted. *Morrissey v. Brewer,* supra, deals only with the constitutional requirements of a revocation hearing. It does not even imply that a system of judicial review of parole board action of any nature is a constitutional requirement.

418 (1973); In re Minnis, 7 Cal 3d 639, 102 Cal Rptr 749, 498 P2d 997 (1972); ORS 144.220; 144.226; 144.228; Oregon Laws 1973, ch 694, section 4.