Submitted on record and briefs January 10, affirmed March 11, petition for rehearing denied April 16, petition for review denied April 30, 1974

PAUL R. BAILLEAUX, *Appellant,* v.
CUPP ET AL (No. 79460), *Respondents.*

520 P2d 483

'Paul R. Bailleaux, appellant in propria persona, Salem.

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Scott McAlister, Assistant Attorney General, Salem, for respondent.

Before SCHWAB, Chief Judge, and FORT and TANZER, Judges.

FORT, J.

Petitioner, contending that he was unlawfully deprived of the status of a parolee by the Oregon State Board of Parole and Probation, brought this habeas corpus proceeding. He appeals from an adverse decision by the circuit court.

ORS 34.710 provides for an appeal in a habeas corpus proceeding as follows:

> "Any party to a proceeding by habeas corpus, including the state when the district attorney appears therein, may appeal from the judgment of the court refusing to allow such writ or any final judgment therein, either in term time or vacation, in like manner and with like effect as in an action. * * *"

In a habeas corpus proceeding, *Smallman v. Gladden,* 206 Or 262, 269, 291 P2d 749 (1955), *overruled on other grounds, State v. Collis,* 243 Or 22, 227-28, 413 P2d 53 (1966), the Supreme Court said:

> "* * * The plaintiff had the burden of impeaching the validity of the process under which he was being held. *In re Application of Loundagin,* 129 Or 652, 278 P 950; *Anderson v. Alexander,* 191 Or 409, 229 P2d 633, 230 P2d 770. The proceeding is in the nature of an action at law resulting in a judgment. The statute provides for appeal 'in like manner and with like effect as in an action.' ORS 34.710. The credibility of the plaintiff and his witness was for the trial court. Its decision on the facts is conclusive here."

Here, petitioner was serving a life sentence pursuant to a judgment previously imposed in 1970 upon

the completion of proceedings under the Habitual Criminal Act following his conviction of three or more felonies.

Following an extensive factual hearing at which petitioner, all members of the Oregon State Board of Parole and Probation and other witnesses called by petitioner testified, the trial court entered its finding of fact as follows:

"1. Petitioner was committed to the Oregon State Penitentiary but was in the Federal Prison in Marion, Illinois.

"2. Petitioner was interviewed at the Federal Penitentiary in Marion, Illinois on October 19, 1972, by Terry L. Johnson, a member of the Oregon Board of Parole and Probation, as a pre-parole hearing.

"3. Mr. Johnson then relayed the information to the other members of the Oregon Board of Parole and Probation and on October 25, 1972, the Oregon Board entered an Order of Parole directing that petitioner be paroled to the physical custody of the State of Hawaii with alternative provisions in the event that the State of Hawaii did not accept petitioner.

"4. Notice of this action was submitted to the petitioner along with a form which he was requested to sign * * * waiving extradition to Hawaii and consenting to return there voluntarily.

"5. Petitioner refused to sign this waiver and upon notification thereof, the Oregon Board of Parole and Probation entered an order cancelling the parole and resetting a hearing date for November, 1973.

"6. Petitioner had discussed the return to Hawaii with Mr. Johnson at the time of the conference/hearing on October 19, 1972, and was aware of the fact that the State of Hawaii had a detainer placed against him. He knew of the intention of the

Oregon Board of Parole and Probation to parole him to Hawaii, if his parole was approved at all, and testified that he refused to sign the waiver form because he hoped that Hawaii would not extradite him and that he wished, by so doing, to gain time to continue pending negotiations to get the Hawaii authorities to drop the claim against him."

The foregoing findings, amply supported by the evidence as they are, are binding upon us. *Smallman v. Gladden,* supra.

Petitioner, if we understand his position correctly, contends that the order of the board of November 27, 1972, canceling its previous order[1] of October 25, 1972, constituted a revocation of parole and thus, under the rule of *Morrissey v. Brewer,* 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972), required the

---

[1] "STATE BOARD OF PAROLE AND PROBATION
Salem, Oregon 97310
"NOTICE TO INMATE
"To: Paul Rowtan BAILIEAUX [sic] 25598 Date: October 25, 1972
    "At the meeting of the State Board of Parole and Probation held on this date, your case was considered, and it was the Board's order that:
"[XX] PAROLE BE GRANTED
    "(  ) if you have an approved release plan.
    "(  ) to the state of ———— under the terms of the Uniform Act for out-of-state supervision.
    "(XX) to the physical custody and control of STATE OF HAWAII ————————————————

"[   ] PAROLE BE DENIED.
"[   ] PAROLE BE CANCELED.
"[   ] PAROLE HEARING DATE BE SET FOR ————
"[XX] OTHERWISE, refer back to the Board
"[XX] SPECIAL CONDITIONS of your parole shall be: (1) You shall find and maintain gainful employment for the duration of your parole. (2) You shall not change residence without permission of your parole officer. (3) You shall not associate with known ex-felons."

holding of hearings and extension of rights mandated by that opinion in connection with revocation of parole. The state of Hawaii by action dated October 25, 1972, did lodge a detainer[2] against petitioner.

In *Sterling v. Bd. of Parole*, 16 Or App 481, 490-91, 519 P2d 1047, Sup Ct *review denied* (1974), we discussed *Morrissey* and said:

> "In pointing out why a revocation of parole proceeding involved rights far more extensive than were available to an inmate prior to parole, the court said:
>
>> " 'We turn to an examination of the nature of the interest of the parolee in his continued liberty. The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison.' 408 US at 482.

---

[2] "We are informed that Mr. Paul R. Bailleaux is presently serving a sentence at the Oregon State Penitentiary.

"We wish to file a detainer against Mr. Bailleaux, as a mittimus has been issued committing him to the Department of Social Services and Housing to serve a 40-year sentence for Robbery in the First Degree.

"Kindly acknowledge receipt of this detainer and notify this office sixty days prior to release in order that we may make arrangements for his pickup and transfer.

"Thank you.
"Sincerely yours,
"/s/ Ray Belnap
"Ray Belnap
"Administrator"

"At that point, a footnote states:

" ' "It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom." United States ex rel. Bey v. Connecticut Board of Parole, 443 F.2d 1079, 1086 (CA2 1971).' 408 US at 482, n 8.

"Thus it is clear that *Morrissey* did not deal with the procedural rights of inmates relating to the initial granting of parole. * * *."

■ We first consider the meaning of the word "parole" in the context of when, in point of time in the parole process, it actually takes place.

In *State v. Ludwig,* 218 Or 483, 486-87, 344 P2d 764 (1959), the court said:

"*A parole,* briefly stated, *is a release from jail, prison or other confinement* after actually serving part of the sentence. Probation is a release by the court before sentence has commenced. *Anderson v. Alexander,* supra." (Emphasis supplied.)

In the case at bar, Mr. Bailleaux at no time was released from prison. We think the parole-granting process continues until the inmate is actually released from confinement.

In *Clifford v. Beto,* 464 F2d 1191, 1193 (5th Cir 1972), decided after *Morrissey,* the court said:

"The crucial issue in this appeal is the threshold issue of whether appellee had been granted a parole that was later summarily revoked, or whether the process of obtaining parole simply never reached fruition. To resolve this issue it is necessary to understand the typical procedural path that leads to release on parole in Texas. * * *".

The court then outlined the eight steps which, under Texas law, comprised the parole-granting process. It then pointed out:

> "In the instant case, appellee never reached his intended destination, step (8), because the Board refused to allow him to accomplish step (7). At some point before the parole agreement was executed his journey was brought to an abrupt halt for reasons not fully disclosed to him. The dispositive question on appeal is one of determining at which step in the parole process a prisoner can be said to have been 'paroled.'" 464 F2d at 1193.

Finally the court said:

> "We conclude that Clifford was never paroled and thus cannot invoke the constitutional and statutory provisions that safeguard a parolee's rights during a revocation of parole. * * *" 464 F2d at 1196.

At the habeas corpus hearing the petitioner testified concerning his refusal to execute the waiver of extradition as follows:

> "* * * It was just a matter of I'm trying to gain time and that I couldn't very well sign a waiver when I had someone trying to negotiate for me. And if I signed it, I don't know, they might extradite me while he is trying to negotiate. So this was my primary reason, for time."

■ To suggest that the Oregon State Board of Parole and Probation abused its discretion in refusing to grant to the petitioner the final step in the parole-granting process—the actual release of the prisoner—in the face of the detainer filed by the state of Hawaii, n 2, supra, is contrary to the intent of ORS 144.270 allowing and requiring the imposition of reasonable conditions as a part of the parole-granting process.

ORS 134.605, known as the Agreement on Detainers, in Art III, (e), states:

"Any request for final disposition made by a prisoner pursuant to paragraph (a) of this Article shall also be deemed to be a waiver of extradition with respect to any charge or proceeding contemplated thereby or included therein by reason of paragraph (d) of this Article, and a waiver of extradition to the receiving state to serve any sentence there imposed upon him, after completion of his term of imprisonment in the sending state.
\* \* \*"

Thus it is clear that the legislature in appropriate circumstances recognizes the need to require execution of waiver of extradition by an inmate as a condition to the exercise of the privilege granted under the Agreement on Detainers. Certainly then, it cannot be said that execution of such a waiver of extradition is an unreasonable condition or arbitrary act by the parole board as a part of the parole-granting process.

Finally, we note that here, unlike *In re Prewitt,* 8 Cal App 3d 470, 105 Cal Rptr 318, 503 P2d 1326 (1972), upon which petitioner relies, there are no fact issues involved. Mr. Bailleaux himself testified as to his reasons for refusing to sign the waiver of extradition allowing him to be returned to Hawaii pursuant to the detainer. No question of confrontation or other claimed due process right is involved. Thus, we do not find it necessary to decide the question there presented.

Affirmed.