Submitted on remand from the Oregon Supreme Court
January 29, argued and submitted April 30, resubmitted
in banc July 17, reversed and remanded July 21,
reconsideration denied September 4,
petition for review denied November 20 (290 Or 157),
reconsideration of attorney fees denied November 3, 1980,
petition for review of attorney fees denied February 4 (290 Or 449),
reconsideration of denial of bail denied March 12,
petition for review of denial of bail denied March 31 (290 Or 727),
reconsideration of denial of motion to hold defendant
in contempt denied July 30, petition for review of denial
of motion to hold defendant in contempt
denied August 25, 1981 (291 Or 504)

ARNOLD HARRIS,
*Petitioner,*

*v.*

BOARD OF PAROLE,
*Respondent.*

(No. 315335, CA 11130)

614 P2d 602

Gene B. Mechanic, Portland, argued the cause for petitioner. With him on the brief were Mark Sussman, Portland, and Prisoners' Legal Services of Oregon, Salem.

William F. Nessley, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the briefs were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

JOSEPH, J.

Schwab, C.J., dissenting opinion.

**JOSEPH, J.**

On review of this court's dismissal of petitioner's appeal from a Parole Board order fixing his release date (39 Or App 913, 593 P2d 1292 (1979)), the Supreme Court held that "ORS 144.335[1] was intended to provide for judicial review of final orders of the Board of Parole relating to the granting of parole and that the Court of Appeals was in error in holding to the contrary." *Harris v. Board of Parole,* 288 Or 495, 503, 605 P2d 1181 (1980). However, because "[i]t may well be that not all orders by the Board of Parole relating to the granting of parole are final orders, so as to be subject to judicial review," 288 Or at 504, this case was remanded to this court to determine "whether the order of the Board of Parole *** was such a final order and, if so, the question whether it was a proper order." 288 Or at 504. We requested and received extensive briefing on questions raised by that remand.[2]

---

[1] ORS 144.335:

"(1)  When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by a final order of the board related to the granting, revoking or discharging of parole, such person is entitled to judicial review of the final order.

"(2)  The order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court filed within 60 days of the order for which review is sought. The board shall submit to the court the record of the proceeding, or, if the inmate agrees, a shortened record. A copy of the record transmitted shall be delivered to the inmate by the board.

"(3)  The court may affirm, reverse or remand the order on the same basis as provided in paragraphs (a) to (d) of subsection (7) of ORS 183.480. The filing of the petition shall not stay the board's order, but the board may do so, or the court may order a stay upon application on such terms as it deems proper.

"(4)  In the case of disputed allegations of irregularities in procedure before the board not shown in the record which, if proved, would warrant reversal or remand, the Court of Appeals may refer the allegations to a master appointed by the court to take evidence and make findings of fact upon them."

[2] Subsequent to the filing of briefs on remand, counsel for respondent moved to supplement the record on appeal and to dismiss the appeal. The purpose of the motion to supplement was to bring to our notice that during

In *Sterling v. Board of Parole,* 16 Or App 481, 519 P2d 1047, *rev den* (1974), we interpreted the words "relating to the granting *** of parole" in ORS 144.335 (Oregon Laws 1973, chapter 694, section 24) in their historical-legislative context to apply "only to termination of parole proceedings carried on pursuant to ORS 144.310-144.400." That determination has now been overruled, but the conundrum has not been solved. ORS 144.335 provides for judicial review only of "final orders." The adjective implies that some orders of the Board are not final (and so are not appealable) and compels a search for a definition of finality.

Neither Oregon Laws 1973, chapter 694, the source of the problem, nor the Administrative Procedures Act (ORS chapter 183) as it stood in 1973 (and up to the enactment of Oregon Laws 1979, chapter 593, section 6 (ORS 183.310(4)(b)) contained an express definition of "final order." The 1973 Act did, however, use that term in section 24(7) (enacting ORS 144.343(7)) in the context of parole revocation proceedings and in section 18 (amending ORS 144.310[3]) in the context of discharge from parole. The term never appears in the legislative history of ORS chapter 144 provisions relating to the granting of parole. So, although there can be little doubt that orders of the Board relating to revocation of or discharge from parole were made appealable in 1973, we have no such

dependency of this case before the Supreme Court the Board of Parole held another hearing and fixed a new release date for petitioner and that petitioner had not sought review of that determination. The motion to supplement was allowed. (April 10, 1980.) The motion to dismiss was based on the claim that the record as supplemented discloses that the pending matter on remand is moot in the face of the subsequent fixing of a new and different release date. The proper interpretation of the statute is a matter of such great public importance for the administration of the parole system that we regard this as an instance where we should proceed to resolve the matter even in the face of apparent mootness of the case at hand. *Perry v. Oregon Liquor Commission,* 180 Or 495, 498, 177 P2d 406 (1947). The motion to dismiss is denied.

[3] In ORS 144.310 the full term is "final order of discharge." That phrase first appeared in Oregon Laws 1941, chapter 387, section 3.

express guidance to help us determine what "orders" relating to "granting" parole are "final" and, thus, appealable.

The matter is made more complex by the fact that prior to enactment of Oregon Laws 1973, chapter 694, ORS chapter 144 did not refer to *any* kind of "order" relating to granting parole. Furthermore, prior to the enactment of chapter 694, and thereafter until 1979 (Oregon Laws 1979, chapter 593, section 6), the Administrative Procedures Act, ORS 183.310(4), only defined "order" as "any agency action *** directed to a named person or named persons, other than employes, officers or members of an agency." Under the pre-1973 parole scheme it would seem that the only "order" relating to granting of parole would have been a directive to the Corrections Division to release an inmate on parole and, possibly, the notice and statement of conditions given a parolee on his release. Section 4 of chapter 694 said:

> "Whenever the State Board of Parole considers the release of a prisoner who, by its rules or order, is eligible for release on parole, it shall be the policy of the board to order his release, unless the board is of the opinion that his release should be deferred or denied ***."

Sections 5 and 6 set out factors, records and information regarding a prisoner that the Board could consider in a parole eligibility determination, and section 7 amended ORS 144.270 to specify conditions which could be attached to the granting of parole.[4] These uses of the word "order" have no persuasive force for the solution of the riddle.[5]

---

[4] Oregon Laws 1973, chapter 836, section 294 reenacted ORS 144.270 in the form it had prior to the enactment of chapter 694. That error was corrected by Oregon Laws 1974, Special Session, chapter 36, section 5.

[5] The Supreme Court's opinion, in discussing the process by which Senate Bills 385 and 379 became chapter 694 in 1973, says, 288 Or at 500: "*** By 'Senate Amendments to Senate Bill 379,' sections 4, 5, 6 *and 7* were added which, *for the first time,* provided procedures relating to the granting of parole, as did Senate Bill 385." (Emphasis supplied.) Section 7 was an amendment to then ORS 144.270 amplifying and defining the Board's powers; it did not add anything new by way of procedure.

We are told, 288 Or at 502, that the 1973 legislation in and of itself, giving due consideration to its legislative history, contains the answer to what is a "final order." That might have been true in 1973, but the light at the end of the tunnel burns weakly in 1980. The history of the 1973 legislation is not clear. The only help we get of the sort the Supreme Court found illuminating is this: Senate Bill 385 would have allowed "judicial review of any board order affecting [an inmate's] release on parole." That language did not survive the merger of Senate Bill 385 with Senate Bill 379.

We could conclude that the legislature, by rejecting the breadth of review in Senate Bill 385 and by substituting a term that has a determinable meaning in the contexts of parole revocation and discharge in the same measure, intended that only parole date set "orders" having the same characteristics of finality be appealable. Be that as it may have been in 1973, the search for those characteristics would serve no present purpose in the light of Oregon Laws 1977, chapter 372, section 18, which repealed ORS 144.175 (which was section 4 of the 1973 law) and ORS 144.180 (section 5 of the 1973 law), leaving only surviving from the 1973 law concerning the granting of paroles ORS 144.185 (section 6 of the 1973 law, relating to records and information available to the Board) and ORS 144.270 (section 7 of the 1973 law, relating to conditions of parole).

If we were to follow strictly the Supreme Court's logic, we could well conclude that when the matter under review was determined *in 1978* the only sort of "order" the Board was capable of making that had the characteristics of finality like those revoking and putting a person back in prison (ORS 144.343(7)) or discharging a person from parole (ORS 144.310) was one implementing parole conditions under ORS 144.270. The Board's action here (fixing a release date) would then not be appealable.

[294]

The 1977 legislation, however, cannot be ignored by us, for it introduced an approach to the parole process which is not only almost wholly new in Oregon but reflects wholesale policy changes relating to the decision process for granting parole by providing for the development, adoption and application of the so-called "matrix system." ORS 144.780-144.785. For immediate purposes we are concerned with sections 5, 6 and 9 of Oregon Laws 1977, chapter 372, which are respectively ORS 144.120,[6] ORS 144.125[7] and

---

[6] ORS 144.120:

"(1) Within six months of the admission of a prisoner to any state penal or correctional institution, the board shall conduct a parole hearing to interview the prisoner and set the initial date of his release on parole pursuant to subsection (2) of this section. Release shall be contingent upon satisfaction of the requirements of ORS 144.125.

"(2) In setting the initial parole release date for a prisoner pursuant to subsection (1) of this section, the board shall apply the appropriate range established pursuant to ORS 144.780. Variations from the range shall be in accordance with ORS 144.785.

"(3) In setting the initial parole release date for a prisoner pursuant to subsection (1) of this section, the board shall consider reports, statements and information received under ORS 144.210 from the sentencing judge, the district attorney and the sheriff or arresting agency.

"(4) Notwithstanding subsection (1) of this section, in the case of a prisoner whose offense included particularly violent or otherwise dangerous criminal conduct or whose offense was preceded by two or more convictions for a Class A or Class B felony or whose record includes a psychiatric or psychological diagnosis of severe emotional disturbance, the board may choose not to set a parole date.

"(5) After the expiration of six months after the admission of the prisoner to any state penal or correctional institution, the board may defer setting the initial parole release date for the prisoner for a period not to exceed 30 additional days pending receipt of psychiatric or psychological reports, criminal records or other information essential to formulating the release decision.

"(6) When the board has set the initial parole release date for a prisoner, it shall inform the sentencing court of the date."

[7] ORS 144.125:

"(1) Prior to the scheduled release on parole of any prisoner and prior to release rescheduled under this section, the board shall interview each prisoner to review his parole plan, his psychiatric or

ORS 144.135.[8]

■    The parties here agree that one of the main purposes of the 1977 law was to systematize the fixing of release dates early after incarceration and thereby take out of the process a large measure of the uncertainty inherent in the previous way of granting paroles. We agree with petitioner's characterization of the new procedures as resulting "in setting prison terms, which are concrete determinations based on set criteria, and *** are felt in a concrete way" by inmates. In the overall scheme of the process there can be no reasonable doubt that the end result (after administrative review, if any (OAR 255-80-005; formerly OAR 254-80-005)) is an order within the apparent legislative intent in 1977 and within the meaning of ORS 183.310(4)(a), as amended in 1979. To be sure, one of the features of the old system that produced uncertainty was that "the parole-granting process continues until the inmate is actually released from confinement." *Bailleaux v. Cupp,* 16 Or App 573, 578, 520 P2d 483, *rev den* (1974); *see also Boyd v. Board of Parole,* 23 Or App 266, 541 P2d 1068 (1975). That there are

psychological report, if any, and the record of his conduct during confinement.

"(2)   The board shall postpone a prisoner's scheduled release date if it finds, after hearing, that the prisoner engaged in serious misconduct during his confinement. The board shall adopt rules defining serious misconduct and specifying periods of postponement for such misconduct.

"(3)   If a psychiatric or psychological diagnosis of present severe emotional disturbance has been made with respect to the prisoner, the board may order the postponement of the scheduled parole release until a specified future date.

"(4)   Each prisoner shall furnish the board with a parole plan prior to his scheduled release on parole. The board shall adopt rules specifying the elements of an adequate parole plan and may defer release of the prisoner for not more than three months if it finds that the parole plan is inadequate. The corrections Division shall assist prisoners in preparing parole plans."

[8] ORS 144.135:

"The board shall state in writing the detailed bases of its decisions under ORS 144.110 to 144.125."

still eventualities that can change a parole date setting in the statute and under the rules ( *see, e.g.,* OAR 255-40-005-020, 255-50-005 *et seq.,* 255-60-005 *et seq.)* does not gainsay that the system now begins (in most instances, *but see* ORS 144.110 and ORS 144.120(4)) with a fixed date setting — the exact opposite of the old system. The process also produces a reviewable record. ORS 144.135; ORS 144.185;[9] OAR 255-30-050 (formerly OAR 254-30-045). We conclude that a decision of the Board of Parole setting a release date is a final order within the meaning of ORS 144.335(1).[10]

ORS 144.335(3)[11] says that judicial review is "on the same basis as provided in paragraphs (a) to (d) of subsection (7) of ORS 183.480." In 1979 the legislature rewrote that section, as well as related ones, and

_____

[9] ORS 144.185:

"Before making a determination regarding a prisoner's release on parole, the State Board of Parole may cause to be brought before it records and information regarding the prisoner, including:

"(1) The reports, statements and information specified in ORS 144.210;

"(2) Any relevant information which may be submitted by the prisoner, his attorney, the victim of the crime, or by other persons;

"(3) A report prepared by the institutional parole staff, relating to the personality, social history and adjustment to authority of the prisoner, including any recommendations which the institutional staff may make;

"(4) All official reports of the prisoner's criminal record, including reports and records of earlier probation and parole experiences;

"(5) The presentence investigation report of the sentencing court or the Corrections Division;

"(6) The reports of any physical, mental and psychiatric examinations of the prisoner;

"(7) The prisoner's parole plan; and

"(8) Other relevant information concerning the prisoner as may be reasonably available."

[10] We do not decide whether a Board choice not to set a parole date under ORS 144.120(4) is a "final order." *But see Sterling v. Blalock,* 47 Or App 275, 614 P2d 610 (1980).

[11] *Supra* n 1. ORS 144.335 has not been amended since its 1973 enactment.

deleted the referenced subsection. In its place, ORS 183.482(8)[12] was enacted to provide the scope of review in contested cases.[13] So, a statute which is no longer law is provided as the one under which this court reviews "final orders" of the Board. However, ORS 174.060 provides:

"When one statute refers to another, either by general or by specific reference or designation, the reference shall extend to and include, in addition to the statute to which reference was made, amendments thereto and statutes enacted expressly in lieu thereof unless a contrary intent is expressed specifically or unless the amendment to, or statute enacted in

---

[12] ORS 183.482(8):

"(8)(a)  The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A)  Set aside or modify the order; or

"(B)  Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b)  The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A)  Outside the range of discretion delegated to the agency by law;

"(B)  Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C)  Otherwise in violation of a constitutional or statutory provision.

"(c)  The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record."

[13] ORS 183.482(7) was also amended to read:

"(7)  Review of a contested case shall be confined to the record, the court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion. In the case of disputed allegations of irregularities in procedure before the agency not shown in the record which, if proved, would warrant reversal or remand, the Court of Appeals may refer the allegations to a Master appointed by the court to take evidence and make findings of fact upon them. The court shall remand the order for further agency action if it finds that either the fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure." *But see* n 13, *infra.*

lieu of, the statute referred to is substantially different in the nature of its essential provisions from what the statute to which reference was made was when the statute making the reference was enacted."

That statutory alteration is procedural in nature and is applicable to review of the final order before us, even though it was made prior to the 1979 legislation. *See Fish and Wildlife Department v. LCDC,* 288 Or 203, 209, 603 P2d 1371 (1979). The only sensible way to approach this curious legislative hodgepodge[14] is simply to hold, as we do, that the referenced provisions of the Administrative Procedures Act do not apply *ipso facto* to review of final orders of the Board, but ORS 183.482(8) is made a part of ORS chapter 144 by the cross-reference in ORS 144.335(3). We turn then, at last, to the review of the order by which petitioner was aggrieved.

Petitioner and respondent agree that fitting petitioner's "offense severity" and "history/risk assessment" scores into the matrix, with consideration for his multiple convictions and consecutive sentences, places him in a matrix range of 10-28 months before parole release, absent any special factors. Respondent, however, concluded that petitioner's prison term should be "aggravated" above the matrix range to 96 months. The only reasons for the action stated by the Board were "multiple crimes and victims." Petitioner's request for administrative review was denied on the basis that "aggravation is adequate to justify a set above guideline range."

Under ORS 144.785(1) the Board "shall adopt rules regulating variations from the ranges, to be

---

[14] We note that ORS 183.315(1) says:

"(1) The provisions of *** 183.480 do not apply to *** State Board of Parole."

Moreover, ORS 183.315(5) says:

"The provisions of *** 183.470 to 183.485 *** do not apply to orders issued to persons who have been committed *** to the custody of the Corrections Division."

[299]

applied when aggravating or mitigating circumstances exist. The rules shall define types of circumstances as aggravating or mitigating and shall set the maximum variation possible." Under the rules in effect at the time of the instant order the Board could depart from a matrix range "only upon a specific finding that there is, by a preponderance of the evidence, aggravation or mitigation which justifies departures from the ranges." Former OAR 254-30-033(1); now OAR 255-35-035(1). The same rule required the Board to "clearly state on the record the facts and specific reasons for the variation from the range," and ORS 144.135 mandates that the Board "state in writing detailed bases of its decisions under ORS 144.110 to 144.125."[15]

Among the conditions bearing on aggravation under the rules as they existed at the time the instant order was made was: "The crime involved multiple victims." Under the present rule, the statement is: "There is a single conviction for a crime involving multiple victims." "Multiple crimes" has never been a listed aggravation circumstance. Former OAR 254-30-030(2)(a) (now OAR 255-35-010(2)(a)) provided that "multiple convictions with concurrent sentences shall be classified according to the crime bearing the highest rating." That is to say, concurrent sentences for multiple crimes enter into the matrix calculation itself, whether or not there were multiple victims. Petitioner here received consecutive sentences in addition to his concurrent sentences in part for the reason that there were two victims. Therefore, it seems apparent that his consecutive sentences and thus the existence of multiple victims was already taken into account in establishing the matrix term of 10-28 months.

---

[15] OAR 255-30-055(2) requires that the Board provide notice to the relevant prisoner and interested law enforcement officials on the prison term set, stating "the specific facts and reasons for decision." *See also* ORS 144.260.

The rules provide that "when a prisoner is serving two or more consecutive sentences, the term of imprisonment shall be the sum of the ranges" (former OAR 254-30-030(2)(d); now OAR 255-35-010(2)(d)) and recognize that consecutive sentences imply at least some consideration of "aggravation" (former OAR 254-30-032(7)(a); now OAR 255-35-020(2)(c)). These very strongly suggest that the multiple crime element has already been taken into consideration in designing the matrix. Moreover, we note that the aggravating factors under OAR 255-35-035 provide that "multiple victims" is an aggravating factor only when "there is a single conviction for a crime involving multiple victims." That is not the present situation.

■ ■   The "matrix system" reflects that under the present scheme of things the Board, not the sentencing court, actually has the power to determine how long a person will be in prison. A judge under ORS 137.120(2) is required to "state on the record the reasons for the sentence imposed," and the Board is required under ORS 144.135 to "state in writing the detailed bases of its decisions ***." We can see no reason why more should be required of a trial judge than of the Board under these parallel statutes. Neither the order before us, nor the rules, tell us why petitioner was subjected to enhanced punishment. The only stated reason does not comply with the Board's own rules. We have no basis to determine why the Board did what it did.

Reversed and remanded.

**SCHWAB, C. J.,** dissenting.

The Supreme Court's opinion in *Harris v. Board of Parole,* 288 Or 495, 605 P2d 1181 (1980), is particularily troublesome. I have always thought that a higher tribunal reviews the *result* reached in a lower tribunal, not the lower tribunal's *reasoning.* Stated differently, there are numerous appellate decisions that disapprove of a lower tribunal's reasoning, but affirm its result on a different basis. The Supreme Court apparently did not share this theory of the review function in *Harris.*

Instead, in *Harris* the Supreme Court disapproved of the reasoning of the Court of Appeals, but expressed no view on the result reached by the Court of Appeals. Rather, the Supreme Court remanded this case to us to determine whether the Parole Board order petitioner has appealed from is "a final order of the board relating to the granting * * * of parole." I would hold that it is not.

We should first clearly identify the nature of the Parole Board's order. Its effect is to state to petitioner: We do not presently intend to consider you for parole for ninety six months. There is, however, nothing in the statutory scheme governing parole that forecloses the board from, at any time, changing the tentative release date set by the order here under review. Indeed, as the majority states in footnote 2, 47 Or App at 291-92, the Parole Board has set a new and different release date for petitioner here. Moreover, the statutes expressly contemplate that a tentative release date set by an order like that here under review might not prove to be an inmate's actual release date. ORS 144.125, 144.185.

This is not a "final order" as that term is now defined in the Administrative Procedures Act. ORS 183.310(4)(b) provides:
" 'Final order' means final agency action expressed in writing. 'Final order' does not include any tentative or preliminary agency declaration or statement that:
"(A)   Precedes final agency action; or
"(B)   Does not preclude further agency consideration of the subject matter of the statement or declaration."

The Parole Board order here in question obviously precedes final agency action in the parole-granting process. It is a tentative or preliminary declaration that does not preclude further Parole Board consideration — the ultimate proof being that the order has actually been superseded by a subsequent order.

Although the Parole Board is exempt from some parts of the Administrative Procedures Act, ORS 183.315(1), it has not been exempted from ORS 183.310(4)(b), which contains the definition of a "final order" quoted above.

The majority notes the existence of this statutory definition of "final order" but fails to explain why it should not be applied in this case. This produces a bizarre situation — "final order" means one thing for all other state agencies, but something different for the Parole Board. The majority perhaps feels compelled to ignore ORS 183.310(4)(b) because of the Supreme Court's assurance in *Harris v. Board of Parole, supra,* that there can be "a final order of the board relating to the granting * * * of parole" other than the actual grant of parole, and because it is difficult, if not impossible, to reconcile the Supreme Court's assurance with ORS 183.310(4)(b).

With all due respect, I would not go to such extremes to try to decipher *Harris.* Accepting, as we must, the Supreme Court's holding that there can be final orders of the Parole Board relating to the granting of parole other than the actual grant of parole, I would simply hold: (1) We cannot now imagine what those final orders might be; and (2) under ORS 183.310(4)(b), this is not one of them.

I would dismiss on the ground that this appeal is not from a final order. Therefore, I respectfully dissent.

Thornton, Buttler and Roberts, Judges, join in this dissent.