Argued and submitted March 10, reversed and remanded April 16, reconsideration denied June 6, 1986, petition for review allowed by opinion August 5, 1986
See 301 Or 437 (1986)

# OREGON REPUBLICAN PARTY et al,
*Appellants,*

*v.*

# STATE OF OREGON et al,
*Respondents.*

(151,883; CA A35035)

717 P2d 1206

John R. Faust, Jr., Portland, argued the cause for appellants. With him on the briefs was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Jeff Bennett, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

## WARDEN, P. J.

Plaintiffs appeal a judgment for defendants in this declarative judgment action. They argue that the trial court erred in determining that a planned 1984 mailing from plaintiff Oregon Republican Party to registered Republicans would have violated ORS 260.665(2)(a). The party intended to enclose postage prepaid envelopes which recipients could use to return requests for absentee ballots to party headquarters. The envelopes, the court held, were a thing of value which would have induced the recipients to vote. We reverse and remand.

The materials which the party intended to send would have included an application for an absentee ballot with the voter's name and address already printed on it, a letter urging the voter to apply for the ballot if the voter was unsure of being able to vote on election day, and an envelope with postage prepaid by the party, in which the voter could send the application to party headquarters. The party would then have forwarded the applications to the appropriate county clerks, who would have actually sent the absentee ballots to the voters. Defendant Paulus, who as Secretary of State was responsible for enforcing the election laws, asked defendant Frohnmayer, as Attorney General, whether the proposed mailing was legal. The Attorney General responded with an opinion that the proposed mailing would violate ORS 260.665. Plaintiff thereupon filed this action, seeking a declaration that the mailing would not violate the statute. The court denied plaintiff's application for a preliminary injunction before the election; afterwards it entered judgment for defendants.[1]

ORS 260.665(2)(a) prohibits subjecting "any person to undue influence with the intent to induce" any person to

---

[1] Although the 1984 election has passed, this case is not moot. It is both "capable of repetition, yet evading review," *Whipple v. OSAA,* 52 Or App 419, 421 n 1, 629 P2d 384, *rev den* 291 Or 504 (1981), and is of sufficient public importance so that we should consider it, even if we would otherwise treat it as moot. *Perry v. Oregon Liquor Commission,* 180 Or 495, 498-499, 177 P2d 406 (1947); *Harris v. Board of Parole,* 47 Or App 289, 291-292 n 2, 614 P2d 602, *rev den* 290 Or 157 (1980); *see also Int'l Electrical Workers v. Central Lincoln PUD,* 69 Or App 127, 129-130, 684 P2d 611 (1984).

register or to vote.[2] ORS 260.665(1) defines "undue influence" as:

> "[F]orce, violence, restraint or the threat of it, inflicting injury, damage, harm, loss of employment or other loss or the threat of it, fraud or giving or promising to give money, employment *or other thing of value."* (Emphasis supplied.)

The issue is whether the postage paid envelope is a thing of value that would be used to induce a person to vote. The parties focus their attention on the first part of the question, whether the envelopes are things of value, but we consider the second part, the question of intent to induce persons to register or vote, to be decisive. The postage paid envelope would have allowed voters to save the cost of a trip to the courthouse or the postage cost of mailing to apply for an absentee ballot. Therefore, it is a thing of value. Even without the return paid postage, the envelope itself is a thing of value.[3]

■        The significant issue is whether the envelopes could have subjected the recipients to undue influence with the intent to induce the recipients to vote. We hold that they would not.

■        To subject a person to undue influence with the intent to induce conduct requires more than mere encouragement or persuasion. Inducement implies the promise of an advantage as a result of performing the desired act; it is persuasion *coupled with* a benefit or the absence of a threatened detriment. *See Webster's Third New International Dictionary* 1154, "induce," and synonyms following. The promised advantage cannot flow from the performance of the act itself. In order to induce a person to vote, one must promise or provide something beyond what is involved in the act of voting; there must be an advantage which has independent value to the voter. Otherwise it could not induce the decision

---

[2] Plaintiff argues that its proposed mailing was not intended to induce recipients to vote but at best would merely encourage registrants to apply for absentee ballots. Applying for an absentee ballot is part of the voting process and is thus within the statutory prohibition.

[3] In their brief, defendants appear to take the position that the envelopes alone have no value:

> "Plaintiffs are not prohibited from mailing a voter a return self-addressed envelope (without postage pre-paid) for the purpose of returning the absentee ballot application to state party headquarters."

to vote. In this case, the envelope would have been useful only in the process of obtaining a ballot; although it may have had value in that process, it had no independent value.[4] It could have *facilitated* the application for an absentee ballot, but it could not have *induced* the decision to apply.

This construction is consistent with the rest of the statute. ORS 260.665(2)(e) prohibits subjecting a person to undue influence to induce him to make a political contribution. Defendants do not argue that the postage paid envelopes violated the statute because the letter included a fund raising appeal, but, if such envelopes may be said to induce people to vote, they may by the same reasoning be said to induce people to contribute funds.[5] Despite defendants' contrary arguments, the construction we give to the statute would not permit an employer to allow an employe time off with pay as an inducement to vote or allow a third party to reimburse a voter for lost wages or other expenses. Voters in those circumstances would receive unearned money, which has independent value. Neither will this construction alter the long-standing interpretation which prohibits the distribution of pencils, matchbooks, fans and other items of nominal, but independent, value. *See* 30 Op Atty Gen 52 (1960); 19 Op Atty Gen 27 (1938).

Because the envelopes in question would not have subjected the recipients to undue influence with the intent to induce them to vote but merely would have facilitated voting, plaintiff was entitled to a declaration that its proposed mailing did not violate ORS 260.665. We need not reach the constitutional issues which plaintiff also presents.

Reversed and remanded for further proceedings not inconsistent with this opinion.

**VAN HOOMISSEN, J.,** specially concurring.

Although I agree with the majority's result, I have some difficulty with its *rationale.*

In the context of this case, I would hold that a

---

[4] The result might be different if the envelopes were blank and the voters could use them for any correspondence or if they came with stamps which voters could use for some other mailing.

[5] In 1978, the Attorney General, in an unpublished letter opinion, made a strained and unsuccessful attempt to distinguish the two situations.

postage-paid, pre-addressed business reply envelope is not a "thing of value" within the meaning of ORS 260.665.[1] If it is a thing of value, I would hold that the value would not be given as an inducement to "register or [to] vote." Rather, it would be given as an inducement to apply for an absentee ballot, an objective not proscribed by ORS 260.655.[2]

The Attorney General asserts that plaintiffs are not prohibited from sending a pre-addressed envelope *without* pre-paid postage for use in returning an absentee ballot application. But even an envelope has *some* value. Why is sending an envelope permissible but sending a postage-paid envelope is impermissible? It cannot be because the value of the envelope without pre-paid postage is *de minimis. See* 30 Op Atty Gen 52 (1960) (an object that costs money is a thing of value); 19 Op Atty Gen 27 (1938) (a pencil is a thing of value).

The Attorney General asserts that sending a stamped, pre-addressed envelope in a solicitation letter is permissible, *see* Atty Gen Op Ltr (January 13, 1978),[3] but

---

[1] ORS 260.665 provides, in relevant part:

"(1) As used in this section, "undue influence" means force, violence, restraint or the threat of it, inflicting injury, damage, harm, loss of employment or other loss or the threat of it, fraud or giving or promising to give money, employment or other thing of value.

"(2) No person, acting either alone or with or through any other person, shall directly or indirectly subject any person to undue influence with the intent to induce any person to:

"(a) Register or vote; * * *"

[2] To hold otherwise is to cast a cloud over the common practice of political parties, the League of Women Voters, the Urban League and numerous other groups that register voters, and provide and receive absentee voter request forms, at shopping centers and at county and state fairs and then mail or take them to county elections offices, thereby saving the voters postage or the burden of taking the forms to the elections offices themselves.

[3] The Secretary of State asked the Attorney General's opinion whether *former* ORS 260.412 (now ORS 260.655) is violated by a candidate who solicits contributions and who encloses with the candidate's literature a pre-addressed return envelope bearing a 13¢ postage stamp. The Attorney General concluded that the act did not violate any law.

"A stamp affixed to a return-addressed envelope is not a 'thing of value' to the potential contributor who received it * * *. Rather, the stamp is a convenience provided strictly for the purpose of facilitating the making of a contribution. Its value is to the candidate, or in another sense, to the postal service, but not to the contributor."

doing what plaintiffs propose to do is impermissible. Clearly, a stamp, which may be removed from an envelope, is *more* a thing of value than is a postage-paid, pre-addressed business reply envelope. The Attorney General's distinctions are too subtle for me. I reject them as hyper-technical and contrary to the intent of the statute.

We have a duty to ascertain legislative intent. In doing so, we look at the text and legislative history of the statute and at the evils which the Legislature was trying to prevent. In my view, an election offense does not exist unless the act tends to produce the types of evils that the statute was designed to avoid. The conduct that plaintiffs here propose simply does not tend to produce any evil.

In his brief, plaintiffs' counsel has suggested that the statute could be interpreted to provide that, for purposes of ORS 260.655, the giving of a thing of value does not include the giving of services or items *without independent value* which do no more than facilitate the recipient's exercise of the franchise. That is consistent with my interpretation of the statute.

Because the court decides this case by interpreting the statute favorably to plaintiffs, we do not address the constitutional issues implicated here. Nevertheless, the conduct at issue here also may be protected under both state and federal constitutions. *See* Or Const, Art I, § § 8 and 26; *Deras v. Myers,* 272 Or 47, 535 P2d 541 (1975); US Const, Amend I and XIV; *Buckley v. Valeo,* 424 US 1, 96 S Ct 612, 46 L Ed 2d 659 (1976).