Argued and submitted September 10, affirmed in part; reversed in part; and remanded for reconsideration November 24, 1982

ALLEN LEE EGGSMAN,
*Petitioner,*
*v.*
STATE BOARD OF PAROLE,
*Respondent.*

(No. 36375, CA A24055)

653 P2d 1277

Michael E. Swaim, Salem, argued the cause and filed the brief for petitioner.

Scott McAlister, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief

were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

Petitioner seeks judicial review, pursuant to ORS 144.335, of an order of the Board of Parole, arguing that the Board abused its discretion when it refused to grant a 20 percent reduction in his prison term and when it also refused to reduce his offense severity rating.[1] We affirm in part but reverse and remand, pursuant to ORS 183.482(8), with respect to the determination concerning the offense severity rating.

In 1962, petitioner was convicted of manslaughter. In 1974, he was convicted for "criminal homicide" under former ORS 163.115 and sentenced to life imprisonment. In 1979, the Board set an initial parole release date of December, 1985.[2] In 1981, petitioner sought a 20 percent reduction in his 144-month prison term, pursuant to OAR 255-40-025. He also requested a reduction in his offense severity rating from "7" (murder) to "6" (manslaughter in the first degree). OAR 255-40-020. On December 18, 1981, the Board granted a six-month reduction but not a maximum 20 percent reduction in the prison term and refused to change the offense severity rating.

We first consider the state's contention that this court lacks jurisdiction[3] to consider petitioner's claim that he is entitled to a greater reduction in his prison term, because the Board had no statutory authority to issue the order.[4] The state argues that once the initial parole release

---

[1] The action of the Board in setting a parole release date is appealable. *Folk v. Board of Parole,* 53 Or App 142, 631 P2d 353 (1981); *Harris v. Board of Parole,* 47 Or App 289, 297, 614 P2d 602 (1980).

[2] In 1978, the Board established petitioner's "personal history/risk score" and his "offense severity rating" and set his initial parole release date at 144 months which was computed as December, 1986. In 1979, the Board discovered that the December, 1986, release date was incorrectly computed, and corrected it to December, 1985.

[3] The state moved to dismiss the appeal. We denied the motion with leave to renew at oral argument.

[4] The record in this case does not disclose any explanation of why the "state," as represented by the Attorney General's office on appeal — *see* ORS 180.060(1)(a) — now takes the position that the Board (which is also the "state," for the purpose of these proceedings) lacked statutory authority to enter the order we here review. If the Board, as respondent in this case, *agrees* with the position now taken on its behalf in the "state's" brief, we should have thought the Board would have withdrawn its order. *See* ORS 183.482(6). If on the other hand, there is an

date has been set, the Board lacks authority later to advance the release date, *i.e.,* shorten the prison term. Although the state's argument does not rise to the level of a jurisdictional issue, we nevertheless examine the challenge to the Board's authority.

The Board's underlying authority to parole is granted by ORS 144.050:

"Subject to applicable laws, the State Board of Parole may authorize any inmate, who is committed to the legal and physical custody of the Corrections Division to go upon parole subject to being arrested and detained under written order of the board or as provided in ORS 144.350. The state board may establish rules and regulations applicable to parole."

ORS 144.120[5] governs the setting of the initial release date. The state contends that that statute "is ambiguous as to whether later reconsideration and possible advancement of the initial date are authorized after an 'initial' release date has been set." The state relies on the legislative history of Oregon Laws 1977, chapter 372, to resolve the claimed ambiguity.

---

unresolved difference of opinion between lawyer and client as to the Board's authority, we should have expected ORS 180.235 to come into play. *See also* ORS 180.060(9). Having noted this peculiarity, we shall proceed to examine all the issues presented, whatever their genesis.

[5] ORS 144.120 provides in part:

"(1) Within six months of the admission of a prisoner to any state penal or correctional institution, the board shall conduct a parole hearing to interview the prisoner and set the initial date of release on parole pursuant to subsection (2) of this section. Release shall be contingent upon satisfaction of the requirements of ORS 144.125.

"(2) In setting the initial parole release date for a prisoner pursuant to subsection (1) of this section, the board shall apply the appropriate range established pursuant to ORS 144.780. Variations from the range shall be in accordance with ORS 144.785.

"* * * * *

"(4) Notwithstanding subsection (1) of this section, in the case of a prisoner whose offense included particularly violent or otherwise dangerous criminal conduct or whose offense was preceded by two or more convictions for a Class A or Class B felony or whose record includes a psychiatric or psychological diagnosis of severe emotional disturbance such as to constitute a danger to the health or safety of the community, the board may choose not to set a parole date.

"* * * * *"

That act made significant changes in the parole process, most importantly by the creation of the "matrix system." ORS 144.780; 144.785; *Harris v. Board of Parole,* 39 Or App 913, 593 P2d 1292, *rev'd and rem'd* 288 Or 495, 605 P2d 1181, *rev'd and rem'd* 47 Or App 289, 297, 614 P2d 602, *rev den* 290 Or 157 (1980). The state points out that early committee drafts of the legislation (HB 2013) contained provisions granting the Board express authority to advance the parole release date and that those provisions were deleted in committee.[6] The deleted provisions were remnants of a former statute. Apparently, the committee elected not to perpetuate the former language, which had given the Board unbridled discretion. What a committee chose *not* to do is a weak indicator of legislative intent. *See OSEA v. Workers' Compensation Dept.,* 51 Or App 55, 59, 624 P2d 1078, *rev den* 291 Or 9, 631 P2d 340 (1981). In *Northwest Natural Gas Co. v. Frank,* 293 Or 374, 381, 648 P2d 1284 (1982), the court stated:

"As a court, our role is to interpret the statutes and constitutional provisions. We do not redraft these provisions; we interpret them as the legislature has drafted them. It is axiomatic that in a case of statutory and constitutional construction, this court must give preeminent attention to the language which the legislature and the people have adopted. The statutes are the law, and while the legislative history may provide invaluable insights into the legislative process, it remains supplemental to the statutes as adopted."

We conclude that ORS 144.050, generally, and ORS 144.780 and 144.785,[7] in particular, confer on the

---

[6] House Judiciary Committee Minutes, April 19, 1977 (HB 2013, sections 4 and 6) and Senate Judiciary Committee Minutes, May 31, 1977 (HB 2013, pages 2 and 6).

[7] ORS 144.780 provides:

"(1) The commission shall propose to the board and the board shall adopt rules establishing ranges of duration of imprisonment to be served for felony offenses prior to release on parole. The range for any offense shall be within the maximum sentence provided for that offense.

"(2) The ranges shall be designed to achieve the following objectives:

"(a) Punishment which is commensurate with the seriousness of the prisoner's criminal conduct; and

"(b) To the extent not inconsistent with paragraph (a) of this subsection:

"(A) The deterrence of criminal conduct; and

Board the authority to advance the parole release date. *Harris v. Board of Parole, supra,* 288 Or at 503, we characterized the Board's authority under these provisions:

> "* * * [I]t is the Board of Parole that determines the actual duration of imprisonment and in doing so it must seek to achieve '[p]unishment which is commensurate with the seriousness of the prisoner's criminal conduct,' after considering 'aggravating or mitigating circumstances.' "

ORS 144.775(8)[8] directs the Board to "adopt rules establishing ranges of duration of imprisonment and variations from the ranges * * *," after taking into consideration the factors provided in ORS 144.780 and 144.785. *Folk v. Board of Parole,* 53 Or App 142, 145, 631 P2d 353 (1981). ORS 144.785 requires the Board to adopt rules regulating

---

"(B) The protection of the public from further crimes by the defendant.

"(3) The ranges, in achieving the purposes set forth in subsection (2) of this section, shall give primary weight to the seriousness of the prisoner's present offense and his criminal history."

ORS 144.785 provides:

"(1) The commission shall propose to the board and the board shall adopt rules regulating variations from the ranges, to be applied when aggravating or mitigating circumstances exist. The rules shall define types of circumstances as aggravating or mitigating and shall set the maximum variation permitted.

"(2) When a prisoner is sentenced to two or more consecutive terms of imprisonment, the duration of the term of imprisonment shall be the sum of the terms set by the board pursuant to the ranges established for the offenses, subject to variations established pursuant to subsection (1) of this section; provided, however, that the duration of imprisonment may be less than the sum of the terms if the board finds, by an affirmative vote of at least four of its members, that consecutive sentences are not appropriate penalties for the criminal offenses involved and that the combined terms of imprisonment are not necessary to protect the community security.

"(3) In no event shall the duration of the actual imprisonment under the ranges or variations from the ranges exceed the maximum term of imprisonment fixed for an offense, except in the case of a prisoner who has been sentenced under ORS 161.725 as a dangerous offender, in which case the maximum term shall not exceed 30 years."

[8] ORS 144.775(8) provides:

"The commission shall propose to the State Board of Parole and the board shall adopt rules establishing ranges of duration of imprisonment and variations from the ranges. In establishing the ranges and variations, factors provided in ORS 144.780 and 144.785 shall be considered. The rules adopted and any amendments thereto which may be adopted shall be submitted to the Sixtieth Legislative Assembly. The Sixtieth Legislative Assembly may amend, repeal or supplement any of the rules."

variations from the ranges in order to accommodate "aggravating or mitigating" circumstances. *Harris v. Board of Parole, supra,* 47 Or App at 299-300.

■ OAR 255-40-025[9] is a rule of mitigation. It confines the Board's discretion; it is consistent with the spirit of Oregon Laws 1977, chapter 372; and it was promulgated pursuant to the Board's authority under ORS 144.780 and 144.785. We hold that the Board has the statutory authority to adopt the rule and to enter the order reducing petitioner's prison term.

Petitioner argues that the Board abused its discretion when it refused to grant a 20 percent reduction in his prison term. OAR 255-40-025 (2). The rule permits a maximum 20 percent reduction when a prisoner shows "an extended course of conduct indicating outstanding reformation." The rule provides, in relevant part:

"Cases will be determined on individual *merits;* however, the usual criteria will include:

"(A) A five-year period of good conduct; and

"(B) Demonstrable achievement in dealing with problems present at incarceration and associated with criminal

---

[9] OAR 255-40-025 provides in part:

"(1) An established prison term as defined in section 255-30-005(2) may be reset to an earlier time upon application for review to the chairperson of the Board and after concurrence of a voting majority of the Board, unless the prisoner has a statutory minimum term for murder. Parole release date resets falling below a judicially imposed minimum sentence shall require concurring votes of four members:

"(a) Reductions in prison terms will ordinarily be granted only in cases where a prisoner can show an extended course of conduct indicating outstanding reformation. Cases will be determined on individual merits; however, the usual criteria will include:

"(A) A five-year period of good conduct; and

"(B) Demonstrable achievement in dealing with problems present at incarceration and associated with criminal conduct (e.g., psychological disorder, drug or alcohol dependency, lack of educational or vocational skills).

"'* * * * *

"(2) Overall, reductions shall be limited to a maximum of 20. of the prison term under review unless a majority of the Board approves a further reduction;

"'* * * * *

"(4) The prisoner shall have the burden of establishing that his/her conduct meets the criteria for a date reduction."

conduct (e.g., psychological disorder, drug or alcohol dependency, lack of educational or vocational skills)." OAR 255-40-025(1)(a). (Emphasis supplied.)

Petitioner contends that he has demonstrated such an unflawed record of rehabilitation that it was an abuse of discretion not to grant a full 20 percent reduction. He argues that "if petitioner is entitled to any reduction, then he is entitled to a full reduction."

In the language of the rule, petitioner has shown "achievement in dealing with problems present at incarceration and associated with criminal conduct." He has achieved success in overcoming problems with alcohol and emotional instability that contributed to the homicide for which he is incarcerated and to the manslaughter conviction 11 years earlier. He has helped other inmates with similar problems. His success was recognized when the Board granted a six-month reduction.

The Board explained its reasons for denying a greater reduction:

"[T]he Board after considering your case, did not believe that a twenty percent reduction was warranted because of the prior manslaughter and the impossibility of demonstrating that the problems that brought you to the second homicide have been dealt with by the admittedly excellent prison adjustment."

The Board was not persuaded, in light of the two homicides, that petitioner had demonstrated such a degree of reformation as to warrant the maximum 20 percent reduction. It is clear that petitioner has made an excellent adjustment to prison life, but that does not necessarily equate to "outstanding reformation." The rule empowers the Board to consider a reduction in the prison term, but it does not *require* the Board to grant a reduction, even though outstanding reformation may be shown. The rule is consistent with ORS 144.780, which requires the Board when it establishes ranges of prison terms to consider other purposes, *e.g.,* punishment, deterrence of crime and the protection of the public. These purposes are part of the "individual merits" of a given case. OAR 255-40-025(1)(a). It was not an abuse of discretion to limit the reduction of the prison term because of the prior manslaughter conviction and the later murder conviction.

Petitioner also contends that the Board abused its authority when it refused to reclassify the offense severity rating of the crime for which he is incarcerated from "7" (murder) to "6" (manslaughter in the first degree). He relies on OAR 255-40-020, which provides in part:

"The Board may reopen any case for reconsideration upon formal written request of a prisoner to the chairpersons or motion of a Board member if:

"* * * * *

"(3) *Statutory changes have reclassified the criminal conduct involved (e.g., reduction of certain categories of murder to manslaughter,* creation of degrees of manslaughter).

"* * * * *

"(6) The Board shall state the specific reasons for denial of a request to reopen a hearing." (Emphasis supplied.)

In 1974, petitioner was convicted of criminal homicide in violation of former ORS 163.115(1)(b) and was sentenced to a maximum term of life imprisonment. The statute provided:

"(1) Except as provided in ORS 163.125, criminal homicide constitutes murder when:

"* * * * *

"It is committed recklessly under circumstances manifesting extreme indifference to the value of human life."

In 1975 the legislature reclassified this form of reckless homicide to manslaughter in the first degree, Or Laws 1975, ch 577 (codified as ORS 163.118(1)(a)), with a maximum term of imprisonment of 20 years. ORS 161.605(1).[10]

---

[10] The legislature's response to this sort of revision is instructive. The 1971 recodification of the criminal code reduced the penalties for some crimes and eliminated other crimes altogether. In 1973, the legislature recognized that some prisoners were serving longer terms under former statutes than the new statutes provided and some might be in prison for acts which were no longer criminal. The legislature responded by requesting the governor to exercise his constitutional power of commutation and pardon. Senate Joint Resolution No. 41 (1973). Petitioner's situation is like that of prisoners after the 1971 revision.

Petitioner has not argued that he is entitled by right to a revised sentence, and he has no such right.

When the Board applied the "matrix" to petitioner in 1978, it assigned an offense severity rating of "7," which was appropriate to murder. The offense severity rating for manslaughter in the first degree was "6." Former OAR 254-30-030, Exhibit A (1978) (now OAR 255-35-010, Exhibit A). The effect of the higher rating was to lengthen petitioner's incarceration.

In 1981, petitioner's request for reclassification pursuant to OAR 255-40-020 was denied with the following explanation:

"The Board considered and declined to apply OAR 255.40.015 [sic] because the penalty for such a manslaughter could be aggravated to the extent that parole denial would be proper. A denial is appropriate under the rules in cases such as this, because of particularly violent, that is the manslaughter, conduct occurring in the past."

It appears that the Board selected the offense severity rating by reference to factors that, in this instance, are relevant only to the personal history/risk score, *i.e.*, the Board considered the individual's characteristics, rather than the classification of the offense. Petitioner's prior conviction is not relevant to determining the severity rating of the crime in question. His prior record and questions of aggravation or parole denial are separate issues — with separate procedural rights. *See, e.g.*, OAR 255-35-035(1)(a).

■ The scope of our review is limited by ORS 183.482(7), (8). The Board's approach suggests that not all offenses under the former statute would be classified similarly. Because of petitioner's prior offense, his reclassification was denied. Presumably, a prisoner who committed the same act but had no prior offense would be granted reclassification. Such individualized treatment of the abstract application of the offense severity rating is impermissibly arbitrary. ORS 183.482(8)(b)(A) and (C); *Jones v. Employment Div.*, 30 Or App 103, 107, 566 P2d 542

---

"The fact that the legislature chooses to reduce the maximum term that may be imposed for a crime does not in the absence of express provision so authorizing, effect any reduction in the length of the sentence imposed under the former statute upon a prisoner then serving a sentence imposed under the former statute. *State v. Gilligan*, 24 Or App 483, 489, 546 P2d 783 (1976)."

The revision of the murder statute did not contain any suggestion that it affected prisoners convicted of offenses under the former statute. Or Laws 1975, ch 577.

(1977); *Home Plate, Inc. v. OLCC,* 20 Or App 188, 530 P2d 862 (1975).

The Board appears to have determined the offense severity rating on an *ad hoc* basis rather than uniformly. We vacate that portion of the order and remand for reconsideration.

Affirmed in part; reversed in part; and remanded for reconsideration in respect to the determination of the offense severity rating.