Argued and submitted February 28, 1995, reversed and remanded July 3, petition for review allowed November 26, 1996 (324 Or 394)

EDWARD CHARLES BOLLINGER,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

(CA A83561)

920 P2d 1111

Andy Simrin, Deputy Public Defender, argued the cause for petitioner. With him on the briefs were Sally L. Avera,

Public Defender, and Eric M. Cumfer, Deputy Public Defender.

Robert K. Lau, Assistant Attorney General, argued the cause for respondent. With him on the briefs were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Christine Ann Chute, Assistant Attorney General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

**LANDAU, J.**

Petitioner seeks review of an order of the Board of Parole and Post-Prison Supervision (Board) setting his parole release date and term of parole supervision. We reverse.

Petitioner was convicted of sodomy in the first degree for conduct that occurred sometime between late 1984 and February 1985. In November 1985, he was sentenced to a 15-year indeterminate term of incarceration with a 5-year minimum. Petitioner's "good time" date—his sentence less credits for good time—was set at July 21, 1994. Several months before his anticipated date of discharge, the Board issued an order setting a release date of June 24, 1994, with a term of supervised parole "to expiration of sentence." Petitioner objected to being released on supervised parole a month before he was scheduled to be unconditionally discharged. The Board denied his request for relief on administrative review, and petitioner sought review of that order. After oral argument on the petition, the Board withdrew its order. It issued an amended order in which it retained the accelerated release date but established a minimum supervision period of 12 months. The Board also found that petitioner is a predatory sex offender. Petitioner requested administrative review, and the Board denied relief. Petitioner filed an amended petition for review, in which he challenges the imposition of parole and the Board's declaration that he is a predatory sex offender.

We begin with petitioner's arguments concerning the imposition of parole. According to petitioner, the Board erred in advancing his release date for two reasons. First, he argues that no statute authorizes the Board to advance a release date without a prior request from the inmate to do so. Second, he argues that, even if the Board does have the authority to advance a prisoner's release date and order parole, under the statute in effect at the time his crime was committed, he has the right to decline parole. The Board argues that it has authority to advance a parole release date and that, under ORS 144.245(3), prisoners have no right to refuse parole. ORS 144.245(3) provides:

"In no case does a prisoner have a right to refuse an order granting the prisoner release upon parole."

Petitioner replies that ORS 144.245(3) was enacted in 1985, after he committed the crime for which he was incarcerated, and that the Board cannot retroactively apply that statute to him without running afoul of the constitutional prohibition on *ex post facto* laws. The state responds that ORS 144.245(3) does, in fact, apply without *ex post facto* effect, because the statute did not change prior law. According to the state, because petitioner never had the right to refuse parole, the statute may lawfully apply to him in this case.

■   We review the Board's order to determine whether it was outside the range of discretion permitted by law or otherwise in violation of constitutional or statutory provisions. ORS 183.482(8)(b); *Price v. Board of Parole*, 301 Or 393, 396-97, 723 P2d 314 (1986).

To understand the parties' arguments, some brief background is appropriate. ORS 421.120 and ORS 421.122 establish a formula by which the Department of Corrections may reduce an inmate's prison term if the prisoner "faithfully has observed the rules of the institution." ORS 421.120(1). The reduction is known as "good time." Generally, the term of an inmate who qualifies for the good time credit is adjusted by deducting a certain number of days from the sentence imposed by the sentencing court. *Id.*; *see also Neal v. Maass*, 94 Or App 119, 121, 764 P2d 947 (1988), *rev den* 307 Or 405 (1989).

In *Erbs v. Board of Parole*, 90 Or App 253, 752 P2d 318 (1988), we held that, once an inmate's term expires, the inmate is discharged from the jurisdiction of the Department of Corrections, and the Board is thereafter without authority to impose conditions of parole. *Id.* at 256. If a person remains incarcerated when the good time release date arrives, he or she is entitled to unconditional release, without a period of supervised parole. *Id.*

As the Board candidly acknowledges in its briefs, following the *Erbs* decision, it adopted a practice of setting a release date in advance of the good time date, in order to

assure that the inmate would serve some period of supervised parole before final discharge. That is what the Board did in this case, over petitioner's attempted refusal. With that context in mind, we turn to the arguments of the parties in this case.

■     Petitioner's argument that the Board lacks authority to advance a prisoner's release date may be quickly resolved. In *Eggsman v. Board of Parole*, 60 Or App 381, 385-86, 653 P2d 1277 (1982), we held that, under the general statutory grant of authority to parole, the Board is authorized to advance the prison release date. The statutes on which we relied in that case were in effect at the time of petitioner's crime in this case. We reject his argument that the Board lacked authority to advance his release date.

■     Petitioner's constitutional argument requires more extended discussion. The issue is whether ORS 144.245(3), which plainly precludes an inmate from refusing parole, represents a change in the law; as the Board readily concedes, if under prior law petitioner could have elected to remain in prison until his good time date, application of the 1985 statute would violate the constitutional prohibition against *ex post facto* laws, because it would retroactively increase the length of punishment for the crime that petitioner committed. To determine whether the 1985 statute changes prior law, we must determine whether, under the pre-1985 law, petitioner had the right to decline parole.

The parties refer us to two statutes regarding an inmate's ability to accept or reject parole. Petitioner cites ORS 421.120(2), which concerns the effect of violating a condition of parole:

> "When a paroled inmate violates any condition of parole, no deduction from the term of sentence * * * shall be made for service by such inmate in the Department of Corrections institution *prior to acceptance and release on parole*, except when authorized by the State Board of Parole and Post-Prison Supervision upon recommendation of the superintendent thereof."

(Emphasis supplied.) According to petitioner, the reference to "acceptance" of parole suggests that the inmate had a choice

whether to accept or reject it. The Board argues that that construction would be at odds with the "traditional policy" of providing a transitional period between incarceration and unconditional release.

The Board refers us to ORS 144.270, which provides, in part:

"(1)  The State Board of Parole and Post-Prison Supervision, in releasing a person on parole, shall specify in writing the conditions of the parole and a copy of such conditions shall be given to the person paroled.

"(2)  The board shall determine, and may at any time modify, the conditions of parole, which may include, among other conditions, that the parolee shall:

"(a)  Accept the parole granted subject to all terms and conditions specified by the board."

According to the Board, that statute demonstrates that the Board may require acceptance of parole.

We are unpersuaded by the Board's proposed construction of the relevant statutes. First, we agree with petitioner that the fair implication of ORS 421.120(2) is that inmates had a choice to accept or to reject parole. No other reading of the reference to "acceptance" in that section makes sense.

Second, the state reads more into ORS 144.270 than its language will support. By its terms, the statute concerns the extent to which the Board may impose conditions when it releases an inmate on parole; it does not concern the decision whether to release on parole in the first place. Thus, when the statute says that the Board may require the parolee to "[a]ccept the parole granted subject to all terms and conditions specified," the point is that the parolee must accept all or none of the conditions; he or she may not pick and choose the conditions of parole. Any other reading of the statute would place ORS 144.270 in direct conflict with ORS 421.120(2), and there is no evidence that the legislature intended that.

Third, we note that, before the enactment of the 1985 statute, the Board itself did not follow the interpretation of ORS 144.270(2)(a) that it now urges. In *Erbs*, for example, involving a petitioner whose sentence began in 1976, we noted—citing the Board Action Form—that "[t]he Board never set a parole release date, because petitioner continually waived such release." *Erbs*, 90 Or App at 255.

Fourth, we also note that during the enactment of the 1985 statute, the Board took the position that, under the current state of the law, inmates had the right to waive parole. ORS 144.245(3) was part of HB 2115, which was introduced at the request of the Department of Corrections. In written testimony submitted to the Senate Judiciary Committee, Bob Watson, Administrator of the Corrections Division, explained:

> "HB 2115 was the result of an effort to force every inmate to accept parole. The Corrections Division and the Parole Board believed inmates would accept parole knowing that they would be supervised whether they took a parole or served all their time to discharge.
>
> "We were wrong. Inmates continue to waive parole adding to the prison crowding. These inmates are 'short timers' who crowd the prisons unnecessarily. * * *
>
> "There is no benefit to the public in having conditional release. We found no improvement in recidivism rates and the process is actually costing more with longer stays in prison, increased parole caseloads and some returns to prison for parole violation.
>
> "HB 2115 is a more direct approach. Simply parole these inmates by removing the inmates' option to waive parole. All released inmates would receive supervision."

Senate Judiciary Committee, April 4, 1985, Ex J. The Deputy Administrator of the Corrections Division submitted similar testimony to the House Judiciary Committee. House Judiciary Committee, February 7, 1985, Ex A.

We conclude, therefore, that, before enactment of ORS 144.245(3), an inmate could waive parole. Application of ORS 144.245(3) to petitioner to prevent his release on his good time date without parole conditions of supervision

increases the total time the state would have supervisory control over him, through either incarceration or parole supervision. That result constitutes an impermissible *ex post facto* law as applied to petitioner. *Williams v. Board of Parole*, 112 Or App 108, 113, 828 P2d 465, *rev dismissed* 313 Or 300 (1992).

Because of our determination, we need not reach petitioner's other assignment of error.

Reversed and remanded.