Argued and submitted July 24, affirmed October 9, 1996, petition for review denied February 4 (324 Or 560) withdrawn March 18, 1997 (325 Or 80)

# NOLAN BURGESS HIBBARD,
*Petitioner,*

*v.*

# BOARD OF PAROLE
# AND POST-PRISON SUPERVISION,
*Respondent.*

(CA A88222)

925 P2d 910

Eric M. Cumfer, Deputy Public Defender, argued the cause for petitioner. With him on the briefs was Sally L. Avera, Public Defender.

Christine Chute, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Petitioner seeks review of an order of the Board of Parole and Post-Prison Supervision (Board), which set his parole release date and term of parole supervision and which further designated petitioner as a predatory sex offender. We affirm.

In March 1986, petitioner was charged in separate indictments of three counts of sexual abuse in the first degree. Those indictments alleged conduct involving different victims and different time periods:

"The defendant, on or between July 1, 1985 and September 30, 1985 * * * did * * * subject ['J'], a person under the age of twelve years to sexual contact[.]"

"The defendant, on or between September 1, 1985 and September 30, 1985 * * * did * * * subject ['B'], a person under the age of twelve years to sexual contact[.]"

"The defendant, on or between December 1, 1984 and November 15, 1985 * * * did * * * subject ['C'], a person under the age of twelve years to sexual contact[.]"[1]

In June 1986, petitioner was convicted, following no contest pleas, on those charges. The court sentenced petitioner to three consecutive five-year terms, with a two-and-one-half year minimum sentence.

During petitioner's incarceration, his projected release date was adjusted several times. The last of those adjustments occurred on November 29, 1994, when the Board fixed petitioner's "good time" date—his sentence less credit for good time—as December 17, 1994. At the same time, the Board reset petitioner's parole release date from December 27, 1994, to December 11, 1994, so that petitioner's parole release date would come before the projected statutory good time date.[2] On December 14, 1994, the Board issued its

---

[1] Those indictments were not part of the Board's administrative record in this matter. However, upon petitioner's unopposed motion, we take judicial notice of the indictments pursuant to OEC 201(b).

[2] The Board's November 29, 1994, "action form" stated, "The purpose of this Board action is to reset subject's parole release date to 12/11/1994, which is prior to the projected statutory good time date."

order releasing petitioner to parole. That order stated that petitioner was to remain on supervised parole until the expiration of his sentence, for 26 months, and further declared that petitioner was a predatory sex offender. After petitioner exhausted his administrative remedies and petitioned for judicial review of the December 14, 1994, order and after the Board's subsequent denial of administrative review, the Board, in November 1995, withdrew its prior order and issued a revised order, and petitioner filed an amended petition for review of that order. Thereafter, on March 5, 1996, the Board withdrew its November 3, 1995, order and issued a second amended order, and petitioner filed an amended petition for review of that second amended order. Although the March 5, 1996, order differs from the December 14, 1994, and November 3, 1995, orders in some respects that are immaterial to this review, it did not modify the Board's prior determination that petitioner should be paroled in advance of his good time release date and its designation of petitioner as a predatory sex offender.

Petitioner originally raised three assignments of error but, after briefing and before submission of the case, withdrew the first.[3] Accordingly, we consider only his second and third assignments.

Petitioner's second assignment of error asserts that the Board acted unlawfully in advancing his parole release date. Petitioner argues particularly that: (1) The Board lacked statutory authority to set his parole release date in advance of his "good time" date; and, in the alternative, (2) even if the Board otherwise possessed such authority, application of ORS 144.245(3), which precludes inmates from refusing parole,[4] would violate constitutional prohibitions against *ex post facto* laws[5] because that statute was enacted after defendant committed his crimes.

---

[3] Petitioner withdrew the first assignment of error following the Board's March 5, 1996, withdrawal and revision of its November 3, 1995, amended order, because the later order "corrected the error" that was the subject of petitioner's first assignment of error.

[4] ORS 144.245(3) provides:

"In no case does a prisoner have a right to refuse an order granting the prisoner release upon parole."

[5] Article I, section 21, of the Oregon Constitution provides, in part: "No *ex-post facto* law * * * shall ever be passed[.]" Article I, section 10, of the United States

■     In *Bollinger v. Board of Parole*, 142 Or App 81, 920 P2d 1111 (1996), we rejected an argument identical to petitioner's first, "lack of authority" argument:

> "Petitioner's argument that the Board lacks authority to advance a prisoner's parole release date may be quickly resolved. In *Eggsman v. Board of Parole*, 60 Or App 381, 385-86, 653 P2d 1277 (1982), we held that, under the general statutory grant of authority to parole, the Board is authorized to advance the prison release date. The statutes on which we relied in that case were in effect at the time of petitioner's crime in this case." *Id.* at 85.

We adhere to that reasoning.

Conversely, *Bollinger* endorses petitioner's alternative, *ex post facto* argument—at least in the abstract. There, we accepted as persuasive the same constitutional arguments that petitioner makes here:

> "The issue is whether ORS 144.245(3), which plainly precludes the inmate from refusing parole, represents a change in the law; as the Board readily concedes, if under prior law petitioner could have elected to remain in prison until his good time date, application of the 1985 statute would violate the constitutional prohibition against *ex post facto* laws, because it would retroactively increase the length of punishment for the crime that petitioner committed. To determine whether the 1985 statute changes prior law, we must determine whether, under the pre-1985 law, petitioner had the right to decline parole.
>
>    "* * * * *
>
> "We conclude, therefore, that, before enactment of ORS 144.245(3), an inmate could waive parole. Application of ORS 144.245(3) to petitioner to prevent his release on his good time date without parole conditions of supervision increases the total time the state would have supervisory control over him, through either incarceration or parole supervision. That result constitutes an impermissible *ex post facto* law as applied to petitioner." *Id.* at 85, 87-88 (citation omitted).

---

Constitution provides, in part: "No State shall * * * pass any * * * ex post facto Law[.]"

The effective date of ORS 144.245(3) was September 20, 1985. Or Laws 1985, ch 53, § 3. Thus, if petitioner committed his crimes before September 20, 1985, he was entitled to refuse parole, and applying ORS 144.245(3) to preclude him from doing so would violate *ex post facto* prohibitions.

Our inquiry reduces, then, to when petitioner committed his crimes. Unlike in *Bollinger*, where the parties apparently agreed that the petitioner's crime antedated the enactment of ORS 144.245(3), that question is disputed here. As noted above, each of the three indictments to which petitioner pleaded no contest "straddled" the September 20, 1985, effective date in that they alleged that petitioner had engaged in sexual abuse "on or between" dates before and after September 20, 1985.

Petitioner argues that the disjunctive temporal ("on or between * * *") breadth of the indictments should be construed against the state, as the party drafting the allegations; that is, to the extent the indictments reasonably can be read as alleging conduct either before or after, or both before and after, September 20, 1985, the indictments and petitioner's consequent pleas should be construed as pertaining only to conduct *before* the September 20, 1985, *ex post facto* "trigger" date. Conversely, the Board contends that, regardless of whether the indictments were arguably imprecise or ambiguous as to the specific timing of his conduct, petitioner, by pleading no contest, and by failing to limit or qualify his pleas,[6] effectively stipulated to the broadest construction of those indictments. Thus, the Board asserts, petitioner's pleas should be construed, as a matter of law, as encompassing conduct on or after September 20, 1985.

■  We have not found any particularly instructive or analogous authority supporting either of those contending positions. Nevertheless, we believe that the Board's analysis

---

[6] The trial court's operative amended judgments, as well as a presentence investigation report pertaining to defendant's crimes, were included in the Board's administrative record. The amended judgments state that the court "inquired of the defendant [about] the facts and circumstances surrounding the charge and his plea[s]" and do not evince any limitation on those pleas.

is ultimately persuasive. Petitioner pleaded no contest without qualification; he did not attempt to limit those pleas temporally to conduct before September 20, 1985. By failing to do so, petitioner assented to the broadest construction of his pleas, *i.e.*, that the state could prove that he committed the offenses on *any* of the dates alleged in the indictment. We thus conclude that petitioner's no contest pleas and the ensuing judgments establish, as a matter of law, that his criminal conduct occurred on or after September 20, 1985. Consequently, application of ORS 144.245(3) was not unconstitutional, and the Board did not err in advancing petitioner's parole release date notwithstanding his attempted refusal of parole.

■      Petitioner's third assignment of error challenges the Board's determination designating him to be a predatory sex offender. ORS 181.585 to ORS 181.589.[7] Although petitioner advances an array of statutory and constitutional arguments, the success of most of those arguments—*e.g.*, that the sexual predator designation violates prohibitions against *ex post facto* laws, double jeopardy, cruel and unusual punishment, and bills of attainder—depends on the premise that the "sexual predator" designation, in itself, constitutes punishment. In *Gress v. Board of Parole*, 143 Or App 7, 924 P2d 329 (1996), which involves virtually identical arguments, we rejected that premise. We have considered, and reject without discussion, petitioner's remaining arguments challenging the sexual predator designation.

Affirmed.

---

[7] In 1995, the Legislative Counsel renumbered *former* ORS 181.507 to ORS 181.509 as ORS 181.585 to ORS 181.587. It also numbered two related new statutes as ORS 181.588 and ORS 181.589. Because those changes are irrelevant to this opinion, we refer to the statutes by their current designations.