No. 142          February 28, 2024          231

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EMANUEL CID,
aka Emmanuel Cid,
Defendant-Appellant.

Washington County Circuit Court
18CR03884; A178968

Oscar Garcia, Judge.

Submitted January 24, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant. Emanual Cid filed the supplemental briefs *pro se*.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Defendant was convicted of a total of nine sex crimes against two children. This is his second appeal, after remand for resentencing. *See State v. Cid*, 315 Or App 273, 500 P3d 758 (2021). Defendant raises four assignments of error and three supplemental *pro se* assignments of error. In his first assignment of error and first and second supplemental *pro se* assignments of error, defendant argues that, as to Counts 1 and 2 and Counts 5 through 9, the trial court should have sentenced him under ORS 137.707, instead of ORS 137.700, because he was a minor when he committed those offenses. In his second, third, and fourth assignments of error and third supplemental *pro se* assignment of error, defendant argues that the trial court erred in failing to merge the guilty findings on three pairs of charges. For the following reasons, we affirm.

## SENTENCING UNDER ORS 137.700

When defendant was 24 years old, he was charged with sexual offenses against two child victims, some of which occurred when defendant was 16 years old and some of which occurred when defendant was 20 years old.[1] Defendant pleaded guilty or no contest to most of the charges, and the remainder were dismissed. As a result, defendant was convicted of two counts of first-degree sodomy, ORS 163.405 (Counts 1 and 2); two counts of first-degree unlawful sexual penetration, ORS 163.411 (Counts 5 and 6); two counts of first-degree rape, ORS 163.375 (Counts 7 and 8); first-degree sexual abuse, ORS 163.427 (Count 9); second-degree rape, ORS 163.365 (Count 10); and second-degree sodomy, ORS 163.395 (Count 11). All of those crimes are Measure 11 offenses.[2] The conduct underlying Counts 1 and 2 and Counts 5 to 9 occurred when defendant was 16 years old. The

---

[1] The indictment alleged that defendant was "at least 18 years of age" at the time of all of the charged offenses, but it is undisputed that defendant was actually 16 years old at the time of the offenses charged in Counts 1 through 9, and that fact is reflected in the amended judgment. The parties agree that we should rely on defendant's actual age.

[2] The offenses listed in ORS 137.700(2) and ORS 137.707(4) are commonly described as Measure 11 offenses, based on the 1994 ballot measure that resulted in the original enactment of ORS 137.700 to 137.707. *State v. Acker*, 175 Or App 145, 150 n 3, 27 P3d 1071 (2001), *rev den*, 333 Or 260 (2002).

conduct underlying Counts 10 and 11 occurred when defendant was 20 years old. Counts 1 to 8 involved one victim, and Counts 9 to 11 involved a different victim. Defendant was sentenced under ORS 137.700 and received an aggregate prison sentence of 138 months.

As to Counts 1 and 2 and Counts 5 through 9, defendant contends that, because he was a minor when he committed those offenses, the trial court should have sentenced him under ORS 137.707, rather than ORS 137.700. ORS 137.700 states the mandatory minimum sentences for Measure 11 offenses and allows no eligibility for sentence reduction for any reason whatsoever. ORS 137.707 is the parallel statute for juvenile offenders aged 15 years or older[3] who are waived into adult court. It states the same mandatory minimum sentences for Measure 11 offenses, and similarly allows no eligibility for sentence reduction—with one crucial exception, which is that offenders sentenced under ORS 137.707 are eligible for a second-look hearing and potential conditional release under ORS 420A.203 and ORS 420A.206:

"(1)   *When a person waived under ORS 419C.349(1)(a) is convicted of an offense listed in subsection (4) of this section*, the court shall impose at least the presumptive term of imprisonment provided for the offense in subsection (4) of this section. The court may impose a greater presumptive term if otherwise permitted by law, but may not impose a lesser term. The person is not, during the service of the term of imprisonment, eligible for release on post-prison supervision or any form of temporary leave from custody. The person is not eligible for any reduction in the minimum sentence for any reason under ORS 421.121 or any other provision of law. *The person is eligible for a hearing and conditional release under ORS 420A.203 and 420A.206.*"

ORS 137.707(1) (emphases added); *see also generally* ORS 420A.203 (listing all categories of persons eligible for second-look hearings, including persons who were under 18 years of age at the time of the offense and were sentenced to a term of imprisonment of at least 24 months under ORS 137.707).

---

[3] Children aged 14 years or younger are not subject to Measure 11 sentencing. ORS 137.709 ("ORS 137.700 and 137.707 do not apply to a person who is under 15 years of age at the time the person commits a crime listed in ORS 137.700 or 137.707.").

It is that exception that causes defendant to want to be sentenced under ORS 137.707, instead of ORS 137.700. A second-look hearing provides juvenile offenders the opportunity to serve a much shorter sentence if they demonstrate that they are rehabilitated and otherwise meet the requirements for conditional release. *See* ORS 420A.203(1)(b) (providing for a second-look hearing when an eligible offender has "served one-half of the sentence imposed or when a person described in [ORS 420A.203(a)(B)] attains 24 years and six months of age"); ORS 420A.203(4)(a)(B) (at the conclusion of the second-look hearing, the court shall order conditional release under ORS 420A.206 if the court finds that the offender has been rehabilitated and reformed; is not a safety threat to the victim, the victim's family or the community; and will comply with the conditions of release); ORS 420A.206 (provisions regarding conditional release).

As a preliminary matter, we agree with the parties that the trial court's stated reason for not applying ORS 137.707 was incorrect. The court reasoned that ORS 137.707 did not apply to defendant based on the date that he committed the offenses. However, it is the original sentencing date that controls, not the date of the offenses. Because defendant was originally sentenced on February 12, 2020, the second-look eligibility provision in ORS 137.707 would apply to him, *if* ORS 137.707 itself applies to him. *See* Or Laws 2019, ch 634, § 32 (the SB 1008 amendments to ORS 137.707 apply "to sentences imposed on or after January 1, 2020"); Or Laws 2019, ch 685, § 4 (the SB 1008 amendments to ORS 137.707 do not apply "to persons who were originally sentenced before January 1, 2020, and who are subsequently resentenced on or after January 1, 2020").

We therefore next address whether ORS 137.707 applies to defendant, a purely legal issue that was argued in the trial court and is properly before us as an alternative basis to affirm. *See Sherertz v. Brownstein Rask*, 314 Or App 331, 341, 498 P3d 850 (2021), *rev den*, 369 Or 338 (2022) (discussing when and how alternative bases to affirm may be considered on appeal). This appeal raises a question of statutory construction, specifically whether a person who commits a Measure 11 crime as a juvenile, reaches the age of majority,

and then is charged in adult court should, if convicted, be sentenced as an adult under ORS 137.700 or as a juvenile offender under ORS 137.707. Defendant argues that "[t]o effectuate the clear legislative intent to focus on the rehabilitative potential of youth offenders, the second-look provision of [ORS 137.707] should be interpreted to apply to all persons who committed their offenses when they were a youth, regardless of when they are ultimately charged." The state counters that the statutory text forecloses that interpretation.

Because the disputed portion of ORS 137.707 was enacted by the legislature,[4] we examine the disputed provision's text and context, as well as any helpful legislative history of which we are aware, with the aim of ascertaining the intent of the legislature. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Text and context "must be given primary weight in the analysis," as only the text "receives the consideration and approval of a majority of the members of the legislature." *Id.* at 171.

Here, the text is unequivocal. ORS 137.707(1) applies only "[w]hen a person waived under ORS 419C.349(1)(a)" is convicted of a Measure 11 offense. ORS 419C.349 is the statute providing for waiver of youths into adult court. *See* ORS 419C.349(2) (allowing the juvenile court to "waive the youth to a circuit, justice or municipal court of competent jurisdiction" if the stated requirements for waiver are met). ORS 419C.349(1)(a), the specific provision cited in ORS 137.707(1), addresses youths alleged to have committed acts that would qualify as Measure 11 offenses. It provides for a

---

[4] In 2019, the legislature passed Senate Bill (SB) 1008, a comprehensive juvenile reform bill that "made substantial changes to the prosecution and sentencing of juvenile offenders." *Marteeny v. Brown*, 321 Or App 250, 253, 517 P3d 343, *rev den*, 370 Or 303 (2022). Among other things, SB 1008 created a procedure for juveniles aged 15, 16, or 17 years old who commit Measure 11 offenses to be waived into adult court, whereas they were previously prosecuted in adult court automatically, and expanded eligibility for second-look hearings to include juveniles waived into adult court on Measure 11 offenses. *Compare* Or Laws 2019, ch 634, § 5 (creating the procedure now codified in ORS 419C.349(1)(a) for waiver into adult court, applicable "in a case in which a petition has been filed alleging that a youth has committed an act when the youth was 15, 16 or 17 years of age," and providing for eligibility for a second-look hearing for youths waived into adult court, as now codified in ORS 137.707), *with* Or Laws 1995, ch 422, § 49 (requiring that when a person commits a Measure 11 crime and "is 15, 16, or 17 years of age, at the time the offense is committed, *** the person shall be prosecuted as an adult in criminal court").

waiver hearing on the state's request when "a petition has been filed alleging that a youth has committed an act when the youth was 15, 16 or 17 years of age that, if committed by an adult, would constitute aggravated murder or an offense listed in ORS 137.707[.]" ORS 419C.349(1)(a).

Defendant was not "waived under ORS 419C.349 (1)(a)." ORS 137.707(1). Defendant was 24 years old when he was charged. Consequently, he was not a "youth" for whom a delinquency "petition" was filed in juvenile court alleging acts that "would" be crimes if committed by an adult. Rather, he was an adult for whom an indictment was returned, resulting in his being charged in circuit court with actual crimes. *See State v. Pike*, 177 Or App 151, 153, 33 P3d 374 (2001), *rev den*, 333 Or 568 (2002) ("As a general rule, if a person is over 18 when he or she is charged with a criminal offense, that person will be tried as an adult," even if the person was under the age of 18 when they committed the charged acts.). Indeed, as defendant acknowledges, given his age when charged, even if the state had filed a petition in juvenile court, the juvenile court would have lacked jurisdiction. ORS 419C.005(1).[5]

If the legislature wanted the second-look eligibility provision in ORS 137.707(1) to apply to anyone other than youths waived into adult court on Measure 11 offenses, then it presumably would have used broader language than "waived under ORS 419C.349(1)(a)" when it added second-look eligibility to ORS 137.707(1) in 2019. The text strongly supports the state's position that defendant was properly sentenced under ORS 137.700, rather than ORS 137.707.

Nothing in the statutory context or legislative history of which we are aware sheds any additional light on the construction of ORS 137.707 or persuades us that the legislature affirmatively intended ORS 137.707(1) to apply to adults who committed Measure 11 offenses as youths but

---

[5] *See* ORS 419C.005(1) ("The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and who has committed an act that is a violation, or that if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city."); ORS 419C.094 ("Except as otherwise provided in ORS 419C.103(3) and (4), the jurisdiction of the juvenile court of the county in which a youth is taken into custody under ORS 419C.080 and 419C.088 shall attach from the time the youth is taken into custody.").

were not charged until reaching adulthood. In any event, where the text of a statute "is truly capable of only one meaning," we must give "no weight * * * to legislative history that suggests—or even confirms—that legislators intended something different." *Gaines*, 346 Or at 173. Legislative history may be used to confirm or illuminate the meaning of plain text, or to demonstrate a latent ambiguity in seemingly plain text, but not to contradict plain text. *Id.* at 172.

There are, of course, policy arguments to be made for treating all juvenile offenders the same, regardless of when the state initiates legal action. The circumstances of an offense, delayed victim reporting, delayed police investigation, or prosecutorial charging decisions are all factors that may lead to a juvenile offender not being charged until after they reach adulthood, at which point they will automatically be charged in adult court. It is not immediately obvious why young adults charged in adult court for offenses committed as youths are treated differently from youths waived into adult court based on their sophistication and maturity and the other waiver factors described in ORS 419C.349(2). However, such policy decisions are squarely in the province of the legislature, not the courts. "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]" ORS 174.010. Defendant's arguments are better directed to the legislature in this instance.

In sum, we conclude that the trial court did not err in sentencing defendant under ORS 137.700, instead of ORS 137.707. Although defendant committed the acts charged in Counts 1 and 2 and Counts 5 through 9 when he was 16 years old, he was not charged until he was an adult. Consequently, he went directly into adult court, rather than being waived into adult court under ORS 419C.349(1)(a). It follows that ORS 137.707(1) did not apply to him at sentencing, as it applies only to juvenile offenders who are "waived under ORS 419C.349(1)(a)."[6]

---

[6] Our text discussion has focused on defendant's first assignment of error. In his first and second *pro se* assignments of error, defendant argues that the trial court violated Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution by "removing defendant (a 16-year-old-juvenile at

## MERGER

Defendant next contends that the trial court erred in failing to merge its guilty findings on three pairs of charges involving the same offense against the same victim. Specifically, he argues that, after accepting his no-contest plea, the court should have entered a single conviction for first-degree sodomy based on Counts 1 and 2; a single conviction for first-degree unlawful sexual penetration based on Counts 5 and 6; and a single conviction for first-degree rape based on Counts 7 and 8. We review merger issues for errors of law. *State v. Moore*, 319 Or App 136, 144, 510 P3d 907, *rev den*, 370 Or 303 (2022) ("We review the trial court's ruling on whether to merge the guilty verdicts for legal error and are bound by the trial court's factual findings if there is constitutionally sufficient evidence in the record to support them.").

Under ORS 161.067(3), repeated violations of the same statutory provision against the same victim are separately punishable only if separated "by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent." As the party asserting that defendant's conduct in each count was separately punishable under ORS 161.067(3), it was the state's burden to prove that each violation constituted a separate criminal episode, *State v. Martin*, 322 Or App 266, 268, 519 P3d 132, *rev den*, 370 Or 694 (2022) ("The state bears the burden of proving by a preponderance of evidence that each offense was a separate criminal episode." (Internal quotation marks omitted.)), or, if two violations occurred in the same criminal episode, that they were separated by a sufficient pause to avoid merger, *State v. Barton*, 304 Or App 481, 499, 468 P3d 510 (2020) ("The state, as the party asserting that defendant's conduct is separately punishable for purposes of ORS 161.067(3), bears the burden of adducing legally sufficient evidence of the requisite sufficient pause." (Internal quotation marks and ellipses omitted.)).

---

the time of the offense) from juvenile Court without conducting a waiver hearing and sentencing under adult statutes (ORS 137.700)." Defendant's constitutional arguments rely on the inaccurate premise that he was "removed" to adult court, as well as being unpreserved. We therefore reject those arguments.

Here, defendant was charged in Count 1 with committing first-degree sodomy "on or about January 3, 2010." He was charged in Count 2 with committing first-degree sodomy "[a]s a separate act and transaction," "on or about January 3, 2010." He was charged in Count 5 with committing first-degree unlawful sexual penetration "[a]s a separate act and transaction," "on or about January 3, 2010." He was charged in Count 6 with committing first-degree unlawful sexual penetration "[a]s a separate act and transaction," "on or about January 3, 2010." He was charged in Count 7 with committing first-degree rape "[a]s a separate act and transaction," "on or about January 3, 2010." He was charged in Count 8 with committing first-degree rape "[a]s a separate act and transaction" "on or about January 3, 2010."

Defendant contends that the "separate act and transaction" language in the indictment was insufficient to establish a sufficient pause between violations of the same statutory provision for purposes of the anti-merger statute. The state maintains that the court properly entered separate convictions on each count. We agree with the state.

The indictment alleged that defendant violated three different statutory provisions in six "separate act[s] and transaction[s]." Critically, in pleading no contest to those charges without qualification, defendant assented to the broadest construction of the charges and his pleas. *State v. Slagle*, 297 Or App 392, 395-96, 441 P3d 644, *rev den*, 365 Or 557 (2019) ("Because defendant pleaded guilty without qualifying his pleas, he assented to the broader construction [of the charging instrument]."); *Hibbard v. Board of Parole*, 144 Or App 82, 88, 925 P2d 910 (1996), *vac'd on other grounds*, 327 Or 594, 965 P2d 1022 (1998) (by pleading no contest without qualification, the petitioner "assented to the broadest construction of his pleas").

The principle of the "broadest construction" has been applied in various scenarios. For example, when a defendant pleads guilty or no contest to multiple crimes, each of which is alleged to have occurred during the same "on or between" date range, or within overlapping date ranges, the court may treat each crime as having been committed on a different date for purposes of the anti-merger statute. *State v.*

*White*, 280 Or App 170, 171-72, 380 P3d 1205 (2016), *rev den*, 360 Or 752 (2017) (holding that merger was not required where the defendant pleaded guilty to five counts of identity theft, which were alleged to have occurred "within an overlapping range of dates," because "the sentencing court could find for purposes of merger that the incidents of identity theft comprising the five counts occurred on dates separate from each other and, therefore, that each count was separated by a sufficient pause"); *State v. Ostrom*, 257 Or App 520, 521, 306 P3d 788 (2013) (similar); *Hibbard*, 144 Or App at 88 (similar).

      *Slagle* provides another example of the principle's application. There, the defendant pleaded guilty to 10 counts of first-degree encouraging child sexual abuse. 297 Or App at 393-94. In each count, he was charged with possessing a "visual recording of sexually explicit conduct involving a child." *Id*. at 393 (internal quotation marks omitted). The defendant argued that merger was required because the charging instrument did not specify whether each count involved the same child or a different child. *Id*. at 395. We rejected that argument, stating, "Because defendant pleaded guilty without qualifying his pleas, he assented to the broader construction that he possessed 10 visual recordings of different children." *Id*. at 396. It followed that "the trial court could enter 10 separate convictions" under the anti-merger statute. *Id*.; *see* ORS 161.067(2) (providing for separate convictions when violations of the same statutory provision involve different victims).

      In this case, we agree with the state that, under the broadest construction of the indictment and defendant's plea, the trial court did not err in entering six separate convictions on Counts 1, 2, 5, 6, 7, and 8. For present purposes, we need not resolve the parties' disagreement as to whether "on or about January 3, 2010" should be treated as a *date range* akin to those in *Hibbard*, *Ostrom*, and *White*, such that it would be proper to treat the violations as occurring on separate dates on that basis alone. Rather, in this case, it is the "separate act and transaction" language that is dispositive. Although two separate "acts" may or may not be separated by a sufficient pause to avoid merger, the broader

construction of the indictment language is that they were so separated. Moreover, a separate "transaction" may be broadly construed to refer to a separate criminal episode altogether. By entering an unqualified no-contest plea, defendant assented to the broader construction of the "separate act and transaction" language in the indictment.

Therefore, the trial court did not err in declining to merge, respectively, the guilty findings on Counts 1 and 2, Counts 5 and 6, and Counts 7 and 8.

Affirmed.