Argued and submitted December 3, 1979
reversed and remanded January 29, 1980

ARNOLD HARRIS,
*Petitioner,*
*v.*
BOARD OF PAROLE,
*Respondent.*
(NO 315335, CA 11130, SC 26265)
605 P2d 1181

Gene B. Mechanic, Prisoners' Legal Services of Oregon, Salem, appeared for the petitioner.

James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and William F. Nessly, Jr., Assistant Attorney General, Salem, appeared contra.

TONGUE, J.

**TONGUE, J.**

Petitioner, an inmate in the Oregon State Penitentiary, filed a petition with the Court of Appeals for review of an order by the Board of Parole setting the initial date of his release on parole for March 1983, following 96 months of imprisonment. Respondent moved to dismiss the petition on the ground that the Court of Appeals had no jurisdiction. The court allowed that motion upon the ground that ORS 144.335(1), as previously construed by it in *Sterling v. Board of Parole*, 16 Or App 481, 519 P2d 1047, *rev den,* (1974), granted that court jurisdiction "only to review orders terminating or revoking parole and orders reinstating parole on the same conditions or granting parole after revocation on modified or different conditions." 39 Or App 913, 915, 593 P2d 1292 (1979). That court also noted that in 1977 the Oregon Legislature made substantial changes in statutory provisions relating to sentencing and parole (1977 Or Laws c 372), but did not amend ORS 144.335(1) or make additional provisions for appeal of Parole Board orders despite its presumed knowledge of the decision by that court in *Sterling.*

Petitioner then filed with this court a petition for review of that decision by the Court of Appeals. In support of that petition it is contended that the decision by the Court of Appeals in *Sterling* was wrong and that even if it was correct ORS 144.335 was amended by implication by the legislature in 1977, a contention also rejected by the Court of Appeals.

We allowed the petition for review because the question whether such orders by the Board of Parole are subject to judicial review is one of importance to the functioning of the statutory program for sentencing and parole of persons convicted of crimes and is also a question of importance to many inmates of the Oregon State Penitentiary.

ORS 144.335(1) provides as follows:

"When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by *a final order of the board related to the granting,* revoking or discharging *of parole,* such person *is entitled to judicial review* of the final order." (Emphasis added)

In *Sterling* the Court of Appeals recognized (at 486) that this statutory provision "standing alone, would seem to support judicial review of the granting process contained in ORS 144.210—144.270 * * *."

The court also noted that 1973 Oregon Laws, Chapter 694 extensively amended the parole and probation process and included detailed provisions relating to two kinds or classifications of parole board proceedings—one dealing with the granting of parole (Sections 4 through 7) and the other dealing with revocation or modification of parole previously granted (Sections 8 through 17); that ORS 144.335(1) was Section 24 of that Act and that Section 21 of that Act provided that:

"Sections 22 to 25 are added to and made a part of ORS 144.310 to 144.400."

The Court of Appeals then held (at 487-88) that because ORS 144.310 to 144.400 related to the termination of parole, rather than the granting of parole, which was provided for in ORS 144.210 to 144.270, it followed that by reason of what the court referred to as "the clear language of Section 21," that the legislature must have intended to provide for judicial review of only those parole board orders relating to the termination of parole and that it did not intend to provide for judicial review of board orders relating to the granting of parole. To support that conclusion the court then quoted as follows (at 488) from *Curly's Dairy v. Dept. of Agriculture,* 244 Or 15, 21, 415 P2d 740 (1966):

"* * * A statute is to be construed with reference to its manifest object, and, if the language is susceptible of two constructions, one which will carry out and the

[498]

other defeat such manifest object, it should receive the former construction."[1]

The Court of Appeals also supported that conclusion by references (at 489) to testimony at the 1973 legislative hearings on SB 379 (later 1973 Or Laws, c 694) from which it concluded that 1973 Oregon Laws, Chapter 694 "had its genesis" in *Morrissey v. Brewer*, 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972), which imposed standards of due process relating to the revocation of parole for violations by the parolee and noted (at 491) that *"Morrissey* did not deal with the procedural rights of inmates relating to the initial granting of parole."

Upon examination of 1973 Oregon Laws, Chapter 694 and its legislative history, we conclude that we must disagree with the analysis of that statute by the Court of Appeals.

Chapter 694 of the 1973 Oregon Laws was the result of a combination of two separate bills—SB 379 and SB 385—both offered by the same sponsors.[2] SB 379 provided procedures for parole revocation, including a provision (Section 15) for judicial review of any order by the Board of Parole "affecting his parole

---

[1] The same conclusion was reached by Schwab, C.J., specially concurring, as follows (16 Or App at 493):

"The legislature, albeit by ambiguous language, provided for judicial review by this court of orders in the revocation and modification classification, but did not provide for review by this court of orders entered pursuant to hearings that determine whether and under what conditions parole should be granted."

As also stated by Schwab, C.J.:

"We have, and I think properly, resolved this case on a point which the parties did not raise by determining that our statutes do not provide for appellate review by this court of parole board orders denying as distinguished from revoking parole."

[2] As stated by Senator Elizabeth Browne, Chairperson of the Senate Committee on Judiciary and Co-sponsor of SB 379 and SB 385, before the Senate Committee on Judiciary on May 16, 1973, "I understand somebody is going to propose an amendment that would put Senate Bill 379, 385 and House Bill 2110 together." Amended SB 379 also included provisions of HB 2110, but those provisions are not relevant to our inquiry.

* * *." That bill may well have had its "genesis" in *Morrissey.* SB 385, however, prescribed procedures for granting parole and provided (by Section 8) for "judicial review of any Board order affecting his release on parole * * *." That bill, which related solely to the granting of paroles, could not have had its "genesis" in *Morrissey,* which was concerned solely with requirements of due process relating to the revocation of parole for violations by the parolee. By "Senate Amendments to SB 379," sections 4, 5, 6 and 7 were added which, for the first time, provided procedures relating to the granting of parole, as did SB 385.

Thus, as the result of these amendments which combined the two bills, SB 379 then had *two* purposes or "objects": one purpose was to provide procedures relating to the revocation of parole and the other purpose to provide procedures relating to the granting of parole. SB 379 thus must be construed "with reference to" *both* of these "objects" or purposes. *Curly's Dairy v. Dept. of Agriculture, supra.*

Section 22, (later Section 21 of 1973 Or Laws, c 694) and Section 25 (later Section 24 of 1973 Or Laws, c 694, and now ORS 144.335(1) and (2)) were also added. Section 22 provided:

> "Sections 23 to 26 are added to and made a part of ORS 144.310 to 144.400." (The statutory provisions relating to revocation of parole.)

Section 25, however, (now ORS 144.335(1) and (2)) provided as follows:

> *"When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by a final order of the board related to the granting,* revoking or discharging *of parole, such person is entitled to judicial review of the final order.* The order and the proceedings underlying the order are subject to review by the court of appeals upon petition to that court filed within 60 days of the order for which review is sought. The board shall submit to the court the record of the proceeding, or, *if the inmate agrees,* a shortened record. A copy of the record transmitted

shall be delivered *to the inmate by the board.* The court may affirm, reverse or remand the order on the same basis as provided in paragraphs (a) to (d) of subsection (1) of ORS 183.480. * * *"

Despite the fact that by Section 22 (later 21), this provision for judicial review was "added to and made a part" of the statutory provisions relating to the revocation of parole, we are unable, for the reasons previously stated, to escape the conclusion that Section 25 demonstrates, by clear and unambiguous terms, a legislative intent to provide for the judicial review of "a final order of the board related to the granting * * * of parole," as well as "a final order of the board related to the * * * revoking or discharge of parole."

In addition, it is of interest to note the specific reference in Section 25 to *"the inmate."* Had the legislature intended to provide for judicial review only of final orders "related to the granting, revoking or discharging of parole," such a reference to "the inmate" would hardly appear to be appropriate because, although a person whose parole is revoked may then be in custody, a person on parole is no longer an "inmate" of the penitentiary, nor is a person being discharged from parole. This specific reference to "the inmate," although by no means controlling, makes it further clear, in our opinion, that the legislature intended to provide for judicial review of final orders related to the granting of parole to "inmates."

This conclusion, in our judgment, is confirmed by the fact that as a result of these Senate amendments the subject matters of the original SB 385 (providing procedures for the granting of parole) and SB 379 (providing procedures for the revocation of parole), both of which provided for judicial review, were combined in one bill.

We have searched the legislative history of 1973 Oregon Laws, Chapter 694 for any indication, other than the provisions of Section 21, to support a conclusion that the legislature intended to limit judicial

review to parole revocation proceedings or that it intended by the adoption of Section 25 (later Section 24) to mean other than that "a person * * * adversely affected * * * by a final order of the board related to the granting * * * parole * * * is entitled to judicial review of the order," as expressly provided by its terms. We find nothing to support such a conclusion.[3]

We have also examined the legislative history of 1977 Oregon Laws, Chapter 372, by which the Oregon Legislature enacted further extensive changes in the statutes relating to the procedure for the granting of parole. We find nothing to indicate that the legislature considered the holding by the Court of Appeals in *Sterling* and declined to adopt legislation to overrule the effects of that decision.[4]

We need not consider or decide whether the legislature intended in 1977 not to overrule *Sterling* or whether by the adoption of 1977 Oregon Laws, Chapter 372, ORS 144.335 was amended by implication so as to provide for judicial review of final orders relating to the granting of parole, as contended by petitioner, because we have already held that ORS 144.335, as enacted in 1973, provided for judicial review of such orders.

It should be noted, however, that by the terms of 1977 Oregon Laws, Chapter 372, which sets forth the

---

[3] The House and Senate Judiciary Committees relied heavily upon a proposed compromise amendment prepared by Mr. Terry Johnson, a member of the Board of Parole, and Mr. Victor C. Pagel of Marion-Polk County Legal Aid. The compromise amendment was submitted by Mr. Johnson in his letter of May 15, 1973, to Senator Browne, Chairperson of the Senate Committee on Judiciary. Mr. Johnson's letter does not limit review to parole revocations, stating, among other things, that "The Board supports the concept of judicial review based on the record to the Court of Appeals * * *." A statement by Mr. Pagel also demonstrates his understanding that the amendments provided for review of orders granting, as well as revoking, parole. (Hearings before the Senate committee on Judiciary on SB 379, SB 385 and HB 2110, May 16, 1973.)

[4] We also find that at least some persons appearing before legislative committees, including Mr. Ira Blalock, then Chairman of the Board of Parole, had the understanding that "[a]ll parole decisions are appealable." (House Committee on Judiciary Transcript, April 26, 1977.)

[502]

legislative plan to eliminate disproportionate sentences, trial courts must consider presentence reports and must state on the record the reasons for sentences imposed (ORS 144.790(1) and 137.120(2)). The sentences imposed by trial courts are for indeterminate periods of time, with the trial court stating only a maximum term to be served and, in its discretion, a minimum sentence up to one-half of that maximum sentence (ORS 137.120(2) and 144.110(1)). Appeals may be taken from sentences claimed to be excessive, and such sentences must be reviewed by the Court of Appeals (ORS 138.040 and 138.050). Moreover, and regardless of the sentences imposed by the courts, the legislature has provided by ORS 144.780 and 144.785 that it is the Board of Parole that determines the actual duration of imprisonment and in doing so it must seek to achieve "[p]unishment which is commensurate with the seriousness of the prisoner's criminal conduct," after considering "aggravating or mitigating circumstances."

It would indeed be incongruous to suppose that the Oregon Legislature intended to provide for judicial review of sentences claimed to be excessive, but intended not to provide for judicial review of final orders by the Board of Parole, which determines the actual duration of imprisonment, particularly in view of the express provisions enacted by the legislature as set forth in ORS 144.335. For reasons previously stated, we hold that ORS 144.335 was intended to provide for judicial review of final orders by the Board of Parole relating to the granting of parole and that the Court of Appeals was in error in holding to the contrary.

As previously noted, the Court of Appeals dismissed the petition to it for judicial review upon the ground that it had no jurisdiction to consider the petition. As a result, the Court of Appeals did not consider the merits of the petition, including the question whether the order of the Board of Parole was a "final order" for purposes of ORS 144.335(1) and, if so, whether it was improper, as contended by petitioner.

It may well be that not all orders by the Board of Parole relating to the granting of parole are final orders, so as to be subject to judicial review. This case was disposed of by the Court of Appeals, however, by the granting of respondent's motion to dismiss for lack of jurisdiction based solely upon its previous decision in *Sterling v. Board of Parole, supra.* The only question briefed in the Court of Appeals was the question whether *Sterling* was correctly decided. The question whether the order of the Board of Parole in this case was such a final order and, if so, the question whether it was an improper order were not briefed either in that court or in this court.

On this state of the record, and for these reasons, this case is remanded to the Court of Appeals.

Reversed and remanded.