No. 520　　　　　June 10, 2026　　　　　451

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

BRIAN DOUGLAS HESSEL,
*Petitioner,*

*v.*

BOARD OF PAROLE AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A187878

Argued and submitted May 7, 2026.

Jedediah Peterson argued the cause for petitioner. Also on the briefs was Weber & Associates, LLC.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Petitioner seeks judicial review of a final order of the Board of Parole and Post-Prison Supervision (the board) that postponed his release for two years due to serious misconduct, ORS 144.125(2). We previously reviewed the board's order, found the board's explanation insufficient, and reversed and remanded for the board to explain its reasoning. *Hessel v. Board of Parole*, 338 Or App 265 (2025) (nonprecedential memorandum opinion) (*Hessel I*). Following remand, the board provided additional reasons for why petitioner's conduct qualified as serious misconduct. We have reviewed those reasons and find them to be adequate. Accordingly, we affirm.

We recite the facts from petitioner's initial petition for review:

"Petitioner was convicted *** of six counts of murder and two counts of aggravated murder for killing a woman in 1989. He was sentenced to life in prison with a 30-year minimum term of incarceration. After a hearing on January 5, 2022, the board issued Board Action Form (BAF) #10 affirming petitioner's release date of April 10, 2022. ***.

"The board held another hearing on March 23, 2022, which petitioner declined to attend. Petitioner does not dispute the following facts. According to the findings made by a Department of Corrections (DOC) hearings officer and then further confirmed by the board in BAF #13, petitioner sent a note to the prison library coordinator on February 14, 2022, which read: "If it's not too much trouble- will you be my valentine?" For that conduct, petitioner was found in violation of two DOC rules: Rule 4.15, Compromising an Employee, and Rule 2.10, Disrespect I. The board found 'reasonable grounds that AIC has engaged in serious misconduct during confinement' and therefore set a parole postponement hearing pursuant to ORS 144.125(2).

"* * * * *

"*** After the postponement hearing, the board issued BAF #13. It found that petitioner had engaged in serious misconduct during confinement constituting a hazard to security under OAR 255-050-0010(2). Therefore, the board extended petitioner's prison term by two years ***.

"Petitioner sought administrative review of BAF #13. *** [H]e argued that the board lacked substantial evidence

to support a finding that * * * he had engaged in misconduct which would rise to a level authorizing the postponement of release on parole. The board denied relief in Administrative Review Response (ARR) #6:

'[S]ubstantial evidence supported the Board's finding you committed serious misconduct during confinement. In BAF #13, the Board found you committed two DOC rule violations, Compromising an Employee (Rule 4.15), and Disrespect I (Rule 2.10). BAF #13 explained that "[t]he facts related to the findings are documented in the violation report and BAF #12," the latter of which provided a summary of the factual circumstances of the rule violations you committed. * * * In your case, evidence showing you engaged in conduct to compromise an employee presents a serious hazard to security, and substantial evidence supports the Board's finding.'"

338 Or App 266-68 (internal citations omitted).

In *Hessel I*, we concluded that the board's decision lacked substantial reason, because the board "did not provide an explanation that sufficiently connected the facts of the case to the result it reached." *Id*. at 270. We reasoned that conduct to compromise an employee—in this case, sending a valentine to a prison employee—*could* constitute serious misconduct, but the board "did not explain how any of the facts it found, either alone or in combination, constituted serious misconduct." *Id*.

On remand, the board withdrew its order and issued a new order, which denied petitioner relief. In that order, the board further explained its reasoning as to why the conduct petitioner engaged in constituted serious misconduct under the statutory standard. The board's stated reasons were that (1) petitioner's DOC rule violations were ranked by DOC as some of the most serious; (2) petitioner's history of violence towards women made this misconduct more concerning; and (3) compromising an employee creates significant risks to the security of an DOC institution:

"The Board determined your violations for Compromising an Employee and Disrespect I amounted to 'serious' misconduct for several reasons. First[,] Compromising an Employee and Disrespect I are facially serious misconducts given how the Department of Corrections ranks the

severity of those rule violations and the potential penalties. Oregon Department of Corrections Exhibit 1 (an exhibit to OAR 291-105-0028) in effect at the time of the Board's hearing lists Compromising an Employee as a category I *** major rule violation (the highest category) and specified a potential penalty of 120 days in disciplinary segregation. Disrespect I is listed as a category III major rule violation with a potential penalty of up to 28 days in disciplinary segregation. Given these facts, and considering one of your rule violations is classified in the most serious category possible, the Board found your disciplinary conduct did amount to serious misconduct.

"The Board also determined your misconduct was 'serious' based on your offense history and history of antisocial and criminal sexual behavior. For instance, in 1983, you were convicted of Public Indecency stemming from you exposing *** your penis to female strangers. Your instant offense of Aggravated Murder against H__ D__ was sexually motivated and occurred after she rejected multiple sexual advances made by you. You forced her to engage in oral sex before repeatedly striking her head with concrete. Your disciplinary violation of Compromising an Employee included you asking a Department of Corrections employee to 'be my valentine.' When confronted by the employee as to why you would write that to her, you replied 'I like to live dangerously.' The Board saw your disciplinary conduct as evidence you continue to struggle with problematic thinking patterns about romantic and sexual relationships with women conducive to rule breaking and antisocial behavior. Given your significant history of harm to women as a result of these problematic thinking patterns, the Board determined your misconduct was 'serious.'

"As described above, the Board noted, per Exhibit G, that your rule violation conduct was a hazard to security. Compromising an Employee is one of the most serious rule violations adults in custody (AICs) can commit. The behavior of compromising an employee is a serious threat to the safety and security of a correctional institution and DOC employees, contractors, volunteers, and other AICs, as the action of compromising creates pathways and risk for dangerous acts like introducing contraband, potential for extortion and concealment of misconduct, risk of and opportunities for escape, and opportunities for sexual misconduct and sexual or physical violence."

The board also explained that it acted within its discretion to postpone petitioner's parole release date on the basis of serious misconduct because of petitioner's "underlying crimes, the previously noted existence of a present severe emotional disturbance, the recent misconduct * * * that presented a hazard to security," as well as petitioner's "demeanor and conduct" at his parole release hearing, which demonstrated, according to the board, "a lack of empathy towards the DOC employee [he] attempted to compromise, and which [he] did based on [his] mistaken but dangerous belief that [he] would not face any consequences from the [b]oard for [his] acts of misconduct against others." The board otherwise affirmed its decision to postpone petitioner's parole release date by 24 months. This petition for judicial review followed.

We review the board's order for legal error, *Morrison v. Board of Parole*, 277 Or App 861, 863, 374 P3d 948, *rev den*, 360 Or 465 (2016), and substantial evidence, ORS 144.335(1), (3); ORS 183.482(8), including substantial reason, *Jenkins v. Board of Parole*, 356 Or 186, 195, 335 P3d 828 (2014). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). In reviewing for substantial evidence, we defer to the board's reasonable inferences and do not reweigh the evidence. *Mendacino v. Board of Parole*, 287 Or App 822, 834, 404 P3d 1048 (2017), *rev den*, 362 Or 508 (2018). Substantial reason, on the other hand, requires that the board "articulate a 'rational connection between the facts and the legal conclusions it draws from them.'" *Jenkins*, 356 Or at 195 (quoting *Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982)).

Petitioner first argues that the board erred in finding that his misconduct qualified as serious. We therefore first review the board's order to determine whether the board "erroneously interpreted a provision of law." ORS 183.482(8)(a); ORS 144.335(3). In this case, the "provision of law" is the board's rule itself.

"An agency's interpretation of its own rule is entitled to judicial deference 'if that interpretation is plausible given the wording of the rule, its context, and any other source of

law.'" *Sohappy v. Board of Parole*, 329 Or App 28, 35, 540 P3d 568 (2023) (quoting *OR-OSHA v. United Parcel Service, Inc.*, 312 Or App 424, 434, 494 P3d 959 (2021)); *see also 1000 Friends of Oregon v. LCDC (Lane Co.)*, 305 Or 384, 390, 752 P2d 271 (1988) ("[T]he legislative choice to entrust the agency both with setting standards and with applying them can imply that the agency's view of its standards (assuming that they are within their authorizing law and are consistently applied) is to be given some appropriate respect by the courts.").

Here, the board has interpreted "serious misconduct" by rule to include misconduct that creates a "hazard to security," "hazard to human life or health," "hazard to property," or is the "third in a series of rule violations within a three-month period, while assigned to any [DOC] program." OAR 255-050-005(5) (May 19, 1988). The board has further interpreted "hazard to security" to include serious DOC rule violations that could create a threat to DOC safety. That interpretation is plausible. "Serious" has several definitions but appears here to mean "such as to cause considerable distress, anxiety, or inconvenience : attended with danger." *Webster's Third New Int'l Dictionary* (unabridged ed 2002) at 2073; *see also Black's Law Dictionary* at 1646 (12th ed 2024) (defining "serious" as "(Of conduct, opinions, etc.) weighty; important <serious violation of rules>."). "Hazard" also has several definitions but appears here to mean "a thing or condition that might operate against success or safety : a possible source of peril, danger, duress, or difficulty." *Webster's* at 1041. The board did not erroneously interpret its rule because its plausible interpretation was consistent with the wording of the rule itself: petitioner's valentine was a hazard to security because petitioner's conduct, in the context in which he committed it, "might operate against" the security of DOC, which, in turn, makes his misconduct "such as to cause considerable distress, anxiety, or inconvenience."[1]

---

[1] The board's interpretation is also consistent with the legislative intent behind the statute allowing the board to extend a parole release date on the basis of serious misconduct, ORS 144.125. ORS 144.125 was enacted in 1977 as part of "extensive changes in the statutes relating to the procedure for the granting of parole." *Harris v. Board of Parole*, 288 Or 495, 502, 605 P2d 1181 (1980). Those extensive changes involved a new sentencing scheme that was designed for more

Because the basic facts are not disputed, the remaining question is whether the facts found by the board amount to substantial evidence under the board's rule. The evidence, as discussed above, included petitioner's rule violations, the severity of the violation, petitioner's history of violence towards women, and petitioner's demeanor when explaining his actions. From those facts, the board could find that petitioner engaged in serious misconduct. As discussed, the board explained how petitioner's misconduct, in the context in which it was committed, qualified as a hazard to security and, therefore, was "serious." The board's finding that petitioner engaged in serious misconduct was thus supported by substantial evidence.

In his second assignment of error, petitioner contends that the board erred in refusing to consider petitioner's evidence about his justification for his misconduct. Petitioner contends that the board erroneously interpreted OAR 255-050-010(2)(c) (May 19, 1988), which provides that "a prisoner may not relitigate facts which have been found at the institution disciplinary court," to preclude the consideration of petitioner's evidence.

---

uniform results. *See Gordon v. Board of Parole*, 343 Or 618, 621-22, 175 P3d 461 (2007) (explaining changes to parole system).

When discussing the bill that would become ORS 144.125, lawmakers were motivated by seeking greater consistency across sentences, in terms of the amount of time individuals would remain incarcerated as opposed to in the community under supervision. *See generally* Minutes, House Committee on Judiciary, HB 2013, Mar 14, 1977 (comments of Rep Dave Frohnmayer) (discussing disparity problem that "comes from the fact that some sentences are too lenient and some are too severe and there are no rules governing what people should normally get"); *id*. (comments of Ira Blalock, Parole Board) (noting that "some disparity crops up because the judges have not made explicit the criteria around which they make their decision * * * particularly in the absence of written rules or reasons for making their determination or judgements").

As part of seeking that consistency, lawmakers wanted the board to develop uniform standards on what kinds of conduct constituted serious misconduct. *See id*. (comments of Rep Hardy Myers). Thus, the apparent policy behind ORS 144.125 was to promote greater consistency in sentences and, at the same time, facilitate maintaining order in the prisons. The board's rules are consistent with the legislative intent behind the statute's overall policy because, by further defining "serious misconduct" in one of four categories, and requiring a fact-finding hearing to clarify whether the conduct meets that definition, the rules both ensure greater consistency in board decisions and further maintain order within prisons.

We disagree with petitioner's characterization of the board's order. The board did not refuse to consider petitioner's evidence. Rather, the board declined to relitigate the factual matter that petitioner violated DOC rules. However, the board still considered petitioner's justification for his actions—albeit in a different way than petitioner may have expected—in noting that his demeanor and lack of empathy for the DOC employee contributed to the seriousness of petitioner's misconduct.

Finally, petitioner argues that the board failed to consider the effectiveness of his prison sanction, as required by its rules, in determining whether his release date should be extended. *See* OAR 255-50-005(4)(a) (listing, as a factor that "shall be considered in determining whether an extension is appropriate," the "effectiveness of the sanction as a disciplinary measure, both to the prisoner and to the general prison population"). Petitioner did not raise this argument to the board and, because petitioner does not explain to us why we should relax the exhaustion requirement here, we decline to consider it in the first instance. *See Golden Rule Farms v. Water Resources Dept.*, 321 Or App 43, 48, 515 P3d 908 (2022) (declining to relax or set aside exhaustion requirement when the "petitioner has offered no convincing reason as to why we should do that here").

Affirmed.